## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Pegasus Rural Broadband, LLC, *et al.,*[1] | Case No. 11-11772 (PJW) |
| Debtors. | (Joint Administration Requested) |

## DEBTORS' MOTION FOR ENTRY OF INTERIM
## AND FINAL ORDERS DETERMINING ADEQUATE
## ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES

The above-captioned debtors and debtors-in-possession (each, a "Debtor" and collectively, the "Debtors"), by and through their proposed counsel, Elliott Greenleaf, hereby move the Court for entry of an order (the "Order"), pursuant to sections 105(a), 363(b), 364 and 503(b)(1) of Title 11 of the United States Code, as amended (the "Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") prohibiting utility providers from altering or discontinuing service on account of prepetition invoices and establishing procedures for determining adequate assurance of payment for future utility services In support of this Motion, the Debtors rely on the *Declaration of Howard Verlin in Support of Chapter 11 Petitions and First Day Orders and Related Relief* (the "Verlin Declaration") filed contemporaneously herewith, and further respectfully state as follows:

## BACKGROUND

1.    On June 10, 2011 the ("Petition Date"), the Debtors filed voluntary petitions for

---

[1] The Debtors are Xanadoo Spectrum, LLC, a Delaware limited liability company; Xanadoo Holdings, Inc., a Delaware corporation; Xanadoo, LLC, a Delaware limited liability company; Pegasus Guard Band, LLC, a Delaware limited liability company; and Pegasus Rural Broadband, LLC, a Delaware limited liability company. Xanadoo Holdings, Inc. is the sole member of Xanadoo, LLC, Pegasus Guard Band, LLC, and Pegasus Rural Broadband, LLC. Xanadoo Holdings, Inc. is a wholly owned subsidiary of Xanadoo Spectrum, LLC.

relief under the Bankruptcy Code. The Debtors have continued in the management of their businesses and property as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

      2.     No committee or trustee has been appointed in these cases.

## A.     <u>The Utility Providers</u>

      3.     In the ordinary course of their business, the Debtors incur utility expenses for electricity, telephone service, internet service, and other services. Approximately thirty utility providers (as such term is used in section 366 of the Bankruptcy Code, collectively, the "<u>Utility Providers</u>") provide these services to the Debtors. On average, the Debtors spend approximately $6,000 each month on utility costs.

      4.     Uninterrupted utility services are essential to the Debtors' ongoing operations and, therefore, to the success of the Debtors' Chapter 11 cases. Without these utility services, the Debtors would be unable to operate and would be forced to shut down.

## B.     <u>Adequate Assurance Payment</u>

      5.     In the event the Court approves the Debtors' proposed debtor-in-possession financing facility, the Debtors expect to have adequate funds to timely pay all postpetition obligations owed to their Utility Providers and intend to do so. Indeed, the Debtors' proposed debtor-in-possession budget attached as Exhibit A to the *Debtors' Motion for Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 363, 364 and 507 of the Bankruptcy Code and Fed. R. Bankr. P. 2002, 4001, and 9014 (I) Authorizing Debtors to Obtain Post-Petition Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (III) Granting Liens and Super-Priority Claims, (IV) Granting Adequate Protection to the Prepetition Secured Parties*

*and (V) Scheduling a Final Hearing Pursuant to Fed. R. Bankr. P. 4001(b) and Local Rule 4001-2(c)* (the "<u>Financing Motion</u>") explicitly sets forth the Debtors' anticipated postpetition expenditures to the Utility Providers. The Debtors submit that the inclusion of the Utility Providers' anticipated charges provides sufficient adequate assurance to the Utility Providers.

## RELIEF REQUESTED

6.     By this Motion, the Debtors seek entry of interim and final orders: (a) determining that the Utility Providers have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code by the Debtors' establishment of the Utility Deposit Account; (b) approving the Debtors' proposed procedures whereby Utility Providers may request additional or different adequate assurance; (c) prohibiting the Utility Providers from altering, refusing or discontinuing services on account of prepetition amounts outstanding and on account of any perceived inadequacy of the Debtors' proposed adequate assurance; and (d) determining that the Debtors are not required to provide any additional adequate assurance beyond what is proposed by this Motion.

## BASIS FOR RELIEF

7.     Section 366(c)(2) of the Bankruptcy Code provides that a Utility Provider may discontinue its services to a debtor if the debtor has not furnished adequate assurance of payment within 30 days after the petition date. Congress enacted section 366 to protect debtors from utility service cutoffs upon a bankruptcy filing while providing utility companies with adequate assurance that the debtors will pay for postpetition services. <u>See</u> H.R. REP. No. 95-595, 350 (1978), <u>reprinted in</u> 1978 U.S.C.C.A.N. 5963, 6306. Accordingly, section 366 protects debtors by prohibiting utilities from altering, refusing or discontinuing services to a debtor solely on account of unpaid prepetition amounts for a period of 30 days after a chapter 11 filing. At the

same time, it protects utilities by permitting them to alter, refuse or discontinue service after 30 days if the debtor has not furnished "adequate assurance" of payment in a form "satisfactory" to the utility.

8. Section 366(c) also restricts the factors that a court may consider when determining whether an adequate assurance payment is in fact adequate. Specifically, courts may no long consider (a) the absence of a security deposit before a debtor's petition date, (b) a debtor's history of timely payments, or (c) the availability of an administrative expense priority when determining the amount of a deposit. Notwithstanding these noteworthy changes, Congress did not abrogate the bankruptcy court's right to determine the amount of adequate assurance necessary or change the fundamental requirement that assurance of payment must simply be "adequate."

9. While section 366(c) limits the factors a court can consider when determining whether a debtor has provided adequate assurance of payment, it does not limit the court's ability to determine the amount of payment necessary, if any, to provide such adequate assurance. Instead, section 366(c) gives courts the same discretion in determining the amount of payment necessary for adequate assurance that they previously had under section 366(b). Compare 11 U.S.C. § 366(b) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.") with 11 U.S.C. § 366(c)(3)(A) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance payment under paragraph (2).").

10. In addition, it is well-established that section 366(b) permits a court to find that no payment at all is necessary to provide a utility with adequate assurance of payment. See Virginia

Elec. & Power Co. v. Caldor Inc.-N.Y., 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other security' should be interpreted narrowly,...a bankruptcy court's authority to 'modify' the level of the 'deposit or other security' provided for under § 366(b), includes the power to require 'no deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'") (citations omitted). This principle may be applicable in cases where the debtor has made prepetition deposits or prepayments for services that utilities will ultimately render postpetition. See 11 U.S.C. § 366(c)(1)(A)(v) (recognizing a prepayment for postpetition services as adequate assurance).

11. Further, section 366(c), like section 366(b), requires only that a utility's assurance of payment be "adequate." Courts recognize that adequate assurance of performance does not constitute an absolute guarantee of a debtor's ability to pay. See, e.g., In re Adelphia Bus. Solutions, Inc., 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002); In re Caldor, Inc.-N.Y., 199 B.R. 1, 3 (Bankr. S.D.N.Y. 1996) (section 366(b) "does not require an 'absolute guarantee of payment'"), aff'd sub nom. Virginia Elec. & Power Co. v. Caldor, Inc.-N.Y., 117 F.3d 646 (2d Cir. 1997); see also In re Steinebach, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance . . . all § 366(b) requires is that a utility be protected from an unreasonable risk of non-payment."). Courts also have recognized that, in determining the requisite level of adequate assurance, bankruptcy courts should "focus upon the need of the utility for assurance, and to require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." Virginia Elec. & Power Co., 117 F.3d at 650 (emphasis in original) (quoting In re Penn Jersey Corp., 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987)); see also In re Penn. Cent. Transp. Co., 467 F.2d 100, 103-04 (3d Cir. 1972) (affirming bankruptcy court's ruling that no utility deposits were necessary where

such deposits would likely "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who are already reasonably protected"). Accordingly, demands by a utility for a guarantee of payment should be refused when the debtor's specific circumstances already afford adequate assurance of payment.

12. The Debtors submit that the inclusion of expenses to Utility Providers in its proposed budget constitutes adequate assurance. The Debtors anticipate having sufficient resources to pay, and intend to pay, all valid postpetition obligations for utility services as they come due in the ordinary course of business. Additionally, the Debtors have a powerful incentive to stay current on their utility obligations because of their reliance on utility services for the operation of their business. These factors, which the Court may and should consider when determining the amount of any adequate assurance payments, justify a finding that the Debtors' Proposed Adequate Assurance is more than sufficient to assure the Utility Providers of future payment.

13. The Court has granted similar relief to that requested herein in a number of cases in this District. See, e.g., In re CB Holding Corp., Case No. 10-1368 (MFW) (Bankr. D. Del. Dec. 13, 2010); In re Urban Brands, Inc., Case No. 10-13005 (KJC) (Bankr. D. Del. Oct. 13, 2010); In re Caribbean Petroleum Corp., Case No. 10-12553 (KG) (Bankr. D. Del. Sept. 8, 2010); In re Haights Cross Communications, Inc., Case No. 10-10062 (BLS) (Bankr. D. Del. Feb. 5, 2010); In re Capmark Financial Group Inc., Case No. 09-13684 (CSS) (Bankr. D. Del. Nov. 24, 2009); In re Masonite Corp., Case No. 09-10844 (PJW) (Bankr. D. Del. Apr. 14, 2009).

## DEBTORS' RESERVATION OF RIGHTS

14. Nothing contained herein is intended to or should be construed as an admission of the validity of any claim against the Debtors, a waiver of the Debtors' right to dispute any claim,

or an approval or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code. The Debtors expressly reserve their right to contest any invoice of a Utility Provider under applicable non-bankruptcy law. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's orders is not intended to and should not be construed as an admission of the validity of any claim or a waiver of the Debtors' right to dispute such claim subsequently.

## NOTICE

15. No trustee, examiner, or creditors' committee has been appointed in these Chapter 11 cases. The Debtors have provided notice of this Motion by facsimile and/or overnight mail to: (a) the Office of the United States Trustee for the District of Delaware; (b) each of the Debtors' creditors holding the twenty (20) largest unsecured claims on a consolidated basis; (c) the Debtors' prepetition secured lenders; (d) the Debtors' proposed post-petition lenders; and (e) all parties that have timely filed appearances pursuant to Bankruptcy Rule 2002. As this Motion is seeking first-day relief, notice of this Motion and any order entered herein will be served on all parties required by Local Rule 9013-1(m). Due to the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this Motion is required.

16. Following entry of the interim Order, the Debtors shall serve by United States mail, first class postage pre-paid, copies of the interim Order and a notice of hearing (the "Final Hearing") to consider entry of the final order (the "Final Hearing Notice") on (a) the Office of the United States Trustee for the District of Delaware; (b) each of the Debtors' creditors holding the twenty (20) largest unsecured claims on a consolidated basis; (c) the Debtors' prepetition

secured lenders; (d) all Utility Providers; and (e) the Debtors' proposed post-petition lenders; and (e) all parties who have timely filed requests for notice under Bankruptcy Rule 2002.

**NO PRIOR REQUEST**

17.     No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) immediately enter an interim order, substantially in the form attached hereto as Exhibit A, and set a date for the Final Hearing; (ii) at the Final Hearing, enter a final order granting the relief requested herein; and (iii) grant such other and further relief as this Court deems appropriate.

Dated: June 13, 2011
Wilmington, DE

**ELLIOTT GREENLEAF**

_____/s/ Shelley A. Kinsella_____
Rafael X. Zahralddin-Aravena (DE No. 4166)
Neil R. Lapinski (DE No. 3645)
Shelley A. Kinsella (DE No. 4023)
Jonathan M. Stemerman (DE No. 4510)
1105 N. Market Street, Ste 1700
Wilmington, DE 19801
Telephone: (302) 384-9400
Facsimile: (302) 384-9399
Email: rxza@elliottgreenleaf.com
Email: nrl@elliottgreenleaf.com
Email: sak@elliottgreenleaf.com
Email: jms@elliottgreenleaf.com

*Proposed Counsel to Debtors and Debtors in Possession*