# Exhibit B

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Pegasus Rural Broadband, LLC, *et al.*,[1] | Case No. 11-11772 (PJW) |
| Debtors. | (Joint Administration Requested) |
| | Re: Docket No. __ |

## INTERIM ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), AND 364(e) AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364, AND (III) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)

This matter coming before this Court on the Debtors' Motion for Entry and Approval of Interim and Final Orders: (A) Authorizing and Approving Postpetition Financing, (B) Granting Liens and Security Interests and Providing Superpriority Administrative Expense Status, (C) Authorizing Use of Cash Collateral and Affording Adequate Protection, (D) Modifying Automatic Stay, and (E) Scheduling Final Hearing, Pursuant to 11 U.S.C. §§ 105, 362, 363 and 364 and Federal Rules of Bankruptcy Procedure 2002 and 4001(c) and (d) (the "Motion")[2], for interim and final orders seeking:

---

[1] The Debtors are Xanadoo Holdings, Inc., a Delaware corporation; Xanadoo, LLC, a Delaware limited liability company; Pegasus Guard Band, LLC, a Delaware limited liability company; and Pegasus Rural Broadband, LLC, a Delaware limited liability company. Xanadoo Holdings, Inc. is the sole member of Xanadoo, LLC, Pegasus Guard Band, LLC, and Pegasus Rural Broadband, LLC. Xanadoo Holdings, Inc. is a wholly owned subsidiary of Xanadoo Spectrum, LLC.

[2] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Motion or the DIP Note, as applicable.

1.    authorization for the Debtors to obtain secured postpetition financing (the "DIP Financing") of approximately $1,600,000.00 (the "DIP Facility") pursuant to the terms and conditions set forth in this interim order (the "Interim Order"), that certain Debtor-In-Possession Revolving Loan Promissory Note (as the same may be amended, supplemented, restated or otherwise modified from time to time the "DIP Note"), together with all agreements, documents, and instruments delivered in connection with the DIP Financing (the "DIP Loan Documents") by and among Xanadoo Spectrum, LLC and its subsidiaries, each a debtor and debtor-in-possession herein (together, the "Debtors") and Xanadoo Company (the "Lender");

2.    authorization for the Debtors to execute the DIP Note and related loan documents and to perform such other acts as may be necessary or desirable in connection with the DIP Financing;

3.    authorization for the Debtors to grant to the Lender first priority liens upon and security interests in substantially all of the Debtors' assets, to secure all obligations owing under the DIP Note;

4.    authorization to grant allowed superpriority administrative expense claims to the Lender;

5.    authorization for the Debtors to use Cash Collateral (as defined herein);

6.    acknowledgment that the Prepetition Lender is adequately protected; and

7.    to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of this Interim Order authorizing the Debtors to borrow up to an aggregate principal amount of $1,600,000.00 pursuant to the terms of this Interim Order and the DIP Note until entry of the Final Order (as defined below); and

8.    to schedule, pursuant to Bankruptcy Rule 4001(c)(2), a hearing (the "Final Hearing") to consider entry of a final order (the "Final Order") authorizing, on a final basis, the DIP Financing and all relief requested in the Motion;

and based upon all the pleadings files with the Court and the evidence presented and the entire record herein; the Court having heard and resolved or overruled all objections to the interim relief requested in the Motion; and the Court having noted the appearances of all parties in interest; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and creditors; and after due deliberation and consideration, and sufficient cause appearing therefor:

**IT IS HEREBY FOUND:**[3]

A.    Petition Date.    On June 10, 2011 (the "Petition Date"), the Debtors commenced their chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their affairs as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner or committee of creditors holding unsecured claims appointed under Section 1102(a) of the Bankruptcy Code (the "Committee") has been appointed in any of the Chapter 11 Cases.

B.    Jurisdiction; Venue.    The Court has jurisdiction over the Chapter 11 Cases and the Debtors' property pursuant to 28 U.S.C. Section 1334.  This is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2)(D).  Venue of the Chapter 11 Cases and the Motion is proper under 28 U.S.C. Sections 1408 and 1409.

---

[3]  Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

C.      <u>Notice</u>. Notice of the Motion, the relief requested therein and the Interim Hearing (the "<u>Notice</u>") has been served pursuant to Federal Rule of Bankruptcy Procedure 4001(c)(2) and was served by the Debtors on (i) the Debtors' twenty largest unsecured creditors on a consolidated basis, (ii) counsel to the Lender, (iii) any parties that have filed a notice of appearance in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002, (iv) all of the landlords of the Debtors' commercial real properties, (v) all known holders of liens upon the Debtors' assets, (vi) the United States Attorney for the District of Delaware, and (vii) the United States Trustee for the District of Delaware.

D.      <u>Debtors' Acknowledgments & Stipulations</u>.   The Debtors acknowledge, represent, stipulate, and agree that:

1.      the Debtors have obtained all authorizations, consents and approvals required to be obtained from, and have made all filings with and given all notices required to be given to, all federal, state and local governmental agencies, authorities and instrumentalities in connection with the execution, delivery, validity and enforceability of the DIP Loan Documents and the use of Cash Collateral (defined below) to which any Debtor is a party;

2.      the aggregate value of prepetition collateral exceeds the aggregate amount of prepetition debt.  As a result of the resultant security and equity cushion, the Prepetition Lenders are over-secured and, therefore, , do not require additional adequate protection to satisfy Sections 361, 363(e), and 364(d)(l) of the Bankruptcy Code;

E.      <u>Cash Collateral</u>.  For purposes of this Interim Order, the term "<u>Cash Collateral</u>" shall mean and include all "cash collateral," as defined in Section 363 of the Bankruptcy Code, in which the any prepetition lender and the Lender have, a lien, security

interest or other interest (whether existing on the Petition Date, arising pursuant to this Interim Order, or otherwise and shall include, without limitation:

1.    all cash proceeds arising from the collection, sale, lease or other disposition, use or conversion of any property upon which the Prepetition Lender, holds a lien or a replacement lien, whether as part of the Prepetition Collateral or pursuant to an order of the Court or applicable law or otherwise, and whether such property has been converted to cash, existed as of the commencement of these Chapter 11 Cases, or arose or was generated thereafter; and

2.    all of the respective deposits, refund claims and rights in retainers of the Debtors upon which the Prepetition Lender holds a lien or replacement lien, whether as part of the Prepetition Collateral or pursuant to an order of the Court or applicable law or otherwise.

F.    <u>Purpose and Necessity of Financing & Use of Cash Collateral</u>.  The Debtors require the DIP Financing to operate their businesses and to fund, among other things, ongoing working capital requirements, and for other purposes permitted by the DIP Note.  The Debtors will suffer immediate and irreparable harm if the Motion is denied.  The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under Section 503 of the Bankruptcy Code, or other financing under Sections 364(c) or (d) of the Bankruptcy Code, on equal or more favorable terms than those set forth in the DIP Loan Documents.  A loan facility in the amount provided by the DIP Loan Documents is unavailable without granting to the Lender, superpriority claims, liens, and security interests, pursuant to Sections 364(c)(1), (2), (3), and 364(d) of the Bankruptcy Code, as provided for in this Interim Order and the DIP Note. The Debtors have concluded, in the exercise of their prudent business judgment, that the DIP Facility represents the best working capital financing available to them at this time.

G.     <u>Good Cause Shown</u>. Good cause has been shown for entry of this Interim Order. The ability of the Debtors to obtain sufficient working capital and liquidity under the DIP Note and use of Cash Collateral is vital to the Debtors' estates and creditors. The liquidity to be provided under the DIP Note and through the use of the Cash Collateral will enable the Debtors to continue to operate their businesses in the ordinary course and preserve the value of the Debtors' businesses. Among other things, entry of this Interim Order is intended to maximize value of the Debtors' assets and to avoid immediate and irreparable harm to, and is in the best interests of, the Debtors, their estates and their creditors. The Debtors' estates will be immediately and irreparably harmed if this Interim Order is not entered.

H.     <u>Good Faith</u>. The terms of the DIP Note, including the interest rates and fees applicable thereto and intangible factors, are more favorable to the Debtors than those available from alternative sources. Based upon the record before the Court, the DIP Note has been negotiated in good faith and at arm's-length among the Debtors and the Lender. Any financial accommodations made to the Debtors by the Lender pursuant to this Interim Order and the other DIP Note shall be deemed to have been extended by the Lender in good faith, as that term is used in Section 364(e) of the Bankruptcy Code, and the Lender shall be entitled to all protections afforded thereby.

I.     <u>Fair Consideration & Reasonably Equivalent Value</u>. The Debtors will receive and have received fair and reasonable consideration in exchange for access to the postpetition loans (the "<u>DIP Loans</u>"), the use of Cash Collateral, and all other financial accommodations provided under the DIP Note and this Interim Order. The terms of the DIP Note are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

J.      <u>Immediate Entry of Interim Order</u>.  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  The permission granted herein to enter into the DIP Loan Documents and to obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtors.  This Court concludes that entry of this Interim Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for access to the financing necessary for the continued flow of supplies and services to the Debtors necessary to sustain the operation of the Debtors' existing businesses and further enhance the Debtors' prospects for a successful restructuring.

K.      <u>Budget for Use of Cash Collateral and DIP Financing</u>.  The Debtors have delivered to the Lender a detailed budget that sets forth projected cash receipts and cash disbursements (by line item) on a weekly basis for the time period from and including the Petition Date through September 9, 2011, a copy of which is attached hereto as <u>Exhibit A</u> (the "<u>Budget</u>").  The Budget may be modified or supplemented from time to time by written agreement of the Lender and the Debtors without the need of further notice, hearing or order of this Court.  The consent of the Lender to any Budget shall not be construed as a commitment to provide DIP Loans or to permit the use of Cash Collateral after the occurrence of a Termination Event (as defined below) under this Interim Order.

Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      <u>Disposition</u>.  The Motion is granted on an interim basis on the terms set forth in this Interim Order.  Any objection to the interim relief sought in the Motion that has not

previously been withdrawn or resolved is hereby overruled on its merits. This Interim Order shall be valid, binding on all parties-in-interest, and fully effective immediately upon entry notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014. The terms and provisions of the DIP Note are approved on an interim basis as set forth herein. The term of this Interim Order, the DIP Note, and the use of Cash Collateral authorized hereunder shall expire, and the DIP Note made pursuant to the this Interim Order and the DIP Note will mature, and together with all interest thereon and any other obligations accruing under the DIP Note, will become due and payable (unless such obligations become due and payable earlier pursuant to the terms of the DIP Note and this Interim Order by way of acceleration or otherwise) on December 11, 2012 if the Final Order has not been entered by the Court prior to such date, or (b) upon the occurrence of a Termination Event (as defined below).

**DIP FINANCING AND CASH COLLATERAL AUTHORIZATION**

      2.      <u>Authorization to Obtain Financing & Use of Cash Collateral</u>.

      (a)      The Debtors are hereby authorized, on an interim basis, to use Cash Collateral and to incur the obligations under the DIP Note subject to the terms of the Budget, the DIP Note and this Interim Order, with borrowings under the DIP Note limited to the aggregate principal amount of up to $1,600,000.00 (the "<u>Maximum Interim Borrowing</u>").

      (b)      For each period beginning on the Petition Date and ending on the last day of each seven-day period set forth in the Budget, (i) the aggregate disbursements by the Debtors (other than for Professional Fees (as defined below)) for any Budget period shall not exceed, without the prior written consent of the Lender, the aggregate amount budgeted for such period as set forth in the Budget by more than a factor of ten percent (10%) of such aggregate amount or (ii) the Debtors' expenditures (other than for Professional Fees)

shall not exceed the Budget amount for any disbursement line item by more than a factor of ten percent (10%) of the budgeted amount for such line item. The Debtor may utilize savings in any one line item (other than Professional Fees) in the Budget that exceed the permitted variance in another line item (other than Professional Fees) pursuant to the terms of the DIP Note.

(c)     To the extent any additional line item is added to the Budget in accordance with the provisions of this Interim Order, such line items shall be subject to such variance provisions as the Debtors and the Lender agree.

(d)     The Lender (i) may assume the Debtors will comply with the Budget, (ii) shall have no duty to monitor such compliance and (iii) shall not be obligated to pay (directly or indirectly) any unpaid expenses incurred or authorized to be incurred pursuant to any Budget. All advances and extensions of credit shall be based upon the terms and conditions of the DIP Note, as the same may be adjusted from time to time. Subject to the terms and conditions of this Interim Order, the Lender shall have the right but not the obligation to extend credit independent of any Budget line item restrictions on loan availability set forth in the DIP Note, and all such DIP Loans shall be entitled to the benefits and protections of this Interim Order.

3.     Authority to Execute and Deliver Necessary Documents.

(a)     The Debtors are authorized and directed to negotiate, prepare, enter into, and deliver the DIP Note and any necessary related loan documents, in each case including any amendments thereto. Each of the Debtors is further authorized and directed to negotiate, prepare, enter into and deliver any UCC financing statements, pledge and security

agreements, and mortgages or deeds of trust encumbering all of the DIP Collateral and securing all of the Debtors' obligations under the DIP Note and this Interim Order.

(b)     The Debtors are hereby further authorized and directed to (i) perform all of its obligations under the DIP Note, and such other agreements as may be required by the necessary and related loan documents to give effect to the terms of the financing provided for therein and in this Interim Order, and (ii) perform all acts required under the DIP Note and this Interim Order.

4.     Valid & Binding Obligations.  All obligations under the DIP Note shall constitute valid and binding obligations of each Debtor, enforceable against each of them and each of their successors and assigns, in accordance with their terms and the terms of this Interim Order, and no obligation, payment, transfer or grant of a security under the DIP Note or this Interim Order shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under Section 502(d) of the Bankruptcy Code) or subject to any avoidance, reduction, set-off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity, except as otherwise set forth herein.

5.     Termination of DIP Note and Cash Collateral Usage.  Notwithstanding anything in this Interim Order to the contrary, the DIP Note and any right that the Debtors have to use Cash Collateral (but no other provision of the DIP Note or this Interim Order), shall immediately and automatically terminate (except as the Lender may otherwise agree in writing), and all obligations under the DIP Note shall be immediately due and payable, upon the earliest to occur of the following (each, a "Termination Event"):

(a)     a Final Order has not been entered on the docket by December 9, 2011;

(b)     the date of final indefeasible payment and satisfaction in full in cash (or by application of the Credit Bid) of the obligations under the DIP Note and the termination of the commitment under the DIP Note;

(c)     the effective date of any confirmed plan of reorganization in any or all of the Chapter 11 Cases;

(d)     the consummation of the sale or other disposition of all or substantially all of the assets of the Debtors whether done by one or a series of transactions;

(e)     immediately upon the Debtors' receipt of written notice from the Lender of the occurrence of any violation by the Debtors of this Interim Order or breach of any negative covenant or affirmative covenant under the DIP Note, which breach is not cured within the terms of the DIP Note;

(f)     the dismissal of any of the Chapter 11 Cases or the conversion of any of the Chapter 11 Cases into a case under Chapter 7 of the Bankruptcy Code;

(g)     any application by the Debtors for entry of an order approving the non-consensual use of Cash Collateral;

(h)     a trustee or an examiner with enlarged powers (beyond those set forth in Sections 1106(a)(3) and (4) of the Bankruptcy Code) relating to the operation of the business of any Debtor is appointed in any of the Chapter 11 Cases without the prior written consent of the Lender or any Debtor applies for, consents to, acquiesces in or fails to object to, any such appointment without the prior written consent of the Lender);

(i)     this Interim Order is stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the Lender;

(j)     the occurrence of an "Event of Default" as defined under the DIP Note;

(k)     the filing of a motion in these Chapter 11 Cases without the prior written consent of the Lender   (i) to obtain financing under section 364 of the Bankruptcy Code from any persons or entities other than the Lender; (ii) to grant to any person or entity other than the Lender a lien or security interest affecting any collateral (iii) to recover from any portion of the collateral any costs or expenses of preserving or disposing of such collateral under section 506(c) of the Bankruptcy Code or (iv) to authorize any action or actions adverse to the Lender, or their rights and remedies hereunder, under the DIP Note or their interest in the collateral;

(l)     the entry of an order in any of these Chapter 11 Cases confirming a plan of reorganization that does not contain a provision for (i) the termination of the Lender's commitment to make DIP Loans and (ii) the indefeasible payment in full in cash of all obligations under the DIP Note

6.     <u>Authorization for Payment of DIP Facility Fees & Expenses</u>. All fees paid and payable, and costs and/or expenses reimbursed or reimbursable (including, without limitation, all fees, costs and expenses referred to in the DIP Notes), as set forth in the DIP Note, by the Debtors to the Lender are hereby approved.  The Debtors are hereby authorized and directed to pay all such fees, costs, and expenses in accordance with the terms of the DIP Note and this Interim Order, without the Debtors and the Lender's counsel having to file any further application with the Court for approval or payment of such fees, costs or expenses.

7.     Amendments, Consents, Waivers, and Modifications. The Debtors, with the express written consent of the Lender, may enter into any amendments, consents, waivers or modifications to the DIP Note without the need for further notice and hearing or any order of this Court, provided, however, that the Debtors shall provide the United States Trustee and counsel to Committee with three (3) business days' advance notice (which may be provided through electronic mail) of their intent to enter into any material amendments, consents, waivers or modifications to the DIP Note.

## GRANTING OF POSTPETITION LIENS AND SUPERPRIORITY CLAIMS TO THE LENDERS

8.     Lenders' Lien Priority.

(a)     To secure the obligations under the DIP Note, the Lender is hereby granted valid and fully perfected, first priority priming liens upon and senior security interests (collectively, the "Postpetition Liens") in all of the property, assets or interests in property or assets of each Debtor, and all "property of the estate" (within the meaning of the Bankruptcy Code) of each Debtor, of any kind or nature whatsoever, real or personal, tangible or intangible or mixed now existing or hereafter acquired or created as of the Petition Date, including, without limitation, all accounts, inventory, goods, contracts, contract rights, investment property, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, letter-of-credit rights, supporting obligations, machinery and equipment, real property (including all facilities), fixtures, leases (and proceeds from the disposition thereof) to the maximum extent permitted under such leases, all of the issued and outstanding capital stock entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)), and all of the issued and outstanding capital stock not entitled to vote (within the

meaning of Treas. Reg. Section 1 .956-2(c)(2)) of each subsidiary of such Debtor, all of the capital stock of all other Persons that are not subsidiaries directly owned by such Debtor, money, investment property, deposit accounts, all commercial tort claims and other causes of action, Cash Collateral, all cash and non-cash proceeds, rents, products, substitutions, accessions, and profits of any of the collateral described above, and subject to entry of the Final Order, any proceeds or property recovered in connection with the pursuit of claims or causes of action arising under Chapter 5 of the Bankruptcy Code, (the "Avoidance Actions") and the proceeds thereof (collectively, the "DIP Collateral")

(b) The Postpetition Liens shall be effective immediately upon the entry of this Interim Order and shall not at any time be (i) made subject or subordinated to, or made *pari passu* with any other lien, security interest or claim existing as of the Petition Date, or created under Sections 363 or 364(d) of the Bankruptcy Code.

(c) The Postpetition Liens shall be and hereby are deemed fully perfected liens and security interests, effective and perfected upon the date of this Interim Order without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing agreements, financing statements and other agreements or instruments, such that no additional steps need be taken by the Lender to perfect such interests.

9. Lenders' Superpriority Claim. The Lender is hereby granted an allowed superpriority administrative expense claim (the "DIP Superpriority Claim") pursuant to Section 364(c)(1) of the Bankruptcy Code in each of the Debtor's Chapter 11 Cases and in any successor cases or cases under the Bankruptcy Code (including a case under chapter 7 of the Bankruptcy Code, the "Successor Cases") for all obligations under the DIP Note, having priority over any

and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under Sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, payable from and having recourse to all pre- and postpetition property of the Debtors and all proceeds thereof including, without limitation, subject to entry of the Final Order, the Avoidance Actions. Except as set forth herein, no other superpriority claims shall be granted or allowed in these Chapter 11 Cases without the consent of the Lender.

   10. <u>Survival of Postpetition Liens & DIP Superpriority Claim</u>. The Postpetition Liens, DIP Superpriority Claim, and other rights and remedies granted under this Interim Order to the Lender, shall continue in this and any Successor Cases and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases and/or upon the dismissal of any of the Chapter 11 Cases or any Successor Cases and such liens and security interests shall maintain their first priority as provided in this Interim Order until all the obligations under the DIP Note have been indefeasibly paid in full in cash (or satisfied by application of the Credit Bid) and completely satisfied and the Lender's commitments have been terminated in accordance with the DIP Note.

## CASH COLLATERAL AUTHORIZATION & ACKNOWLEGEMENT OF ADEQUATE PROTECTION FOR PREPETITION LENDERS

   (a) <u>Adequate Protection for Prepetition Lenders</u>. The security and equity cushion demonstrated by Debtors indicates that Prepetition Lenders are over-secured and, as such, do not require additional adequate protection in respect of any diminution in the value of the Prepetition Collateral, the incurrence of the obligations under the DIP Note, the

use of Cash Collateral and the granting of the DIP Liens from and after the Petition Date (the "Diminution Claim")

**PROVISIONS RELATING TO THE CARVE OUT, INVESTIGATION PERIOD, REMEDIES NOTICE PERIOD & RESTRICTIONS ON THE USE OF FUNDS & CASH COLLATERAL**

11.     Carve-Out. (a) The Postpetition Liens, the DIP Superpriority Claim, the Replacement Liens, the Adequate Protection Superpriority Claims and the Prepetition Liens shall be subject to:  (i) fees payable to the United States Trustee pursuant to 28 U.S.C. Section 1930(a)(6) or to the Clerk of the Bankruptcy Court (the "Case Administration Fees"), (ii) unpaid professional fees and expenses  ("Professional Fees") payable to any legal or financial advisors retained by the Debtors and any Committee that are incurred or accrued prior to the date of the occurrence of a Termination Event, but only as and to the extent such Professional Fees are or have been provided for in the Budget and are ultimately allowed by the Court pursuant to Section 330 of the Bankruptcy Code, (iii) unpaid Professional Fees incurred or accrued on or after the date of the occurrence of a Termination Event in an aggregate amount not to exceed $50,000.00, and (iv) the costs of the claims and noticing agent (subject to the terms of its retention order and the Budget) (collectively, the "Carve-Out").  So long as no Termination Event has occurred, the Debtors shall be permitted to pay Case Administration Fees, the costs of the claims and noticing agent, and Professional Fees allowed and payable under Bankruptcy Code Sections 330, 331 and 503, as provided in the DIP Note and the Budget.  Any payment of Carve-Out expenses incurred after the occurrence and during the continuance of a Termination Event, including any payment of Professional Fees, shall permanently reduce the Carve-Out on a dollar-for-dollar basis.  The Lender's obligation to permit the use of Cash Collateral to fund or to otherwise pay the Carve-Out expenses from the proceeds of the DIP Collateral shall be added to and made part of the

16

obligations under the DIP Note and secured by the DIP Collateral and otherwise entitled to the protections granted under this Interim Order, the DIP Note, the Bankruptcy Code and applicable law, as applicable.

(b)　　Nothing contained in this Interim Order shall be construed: (i) to exempt those persons hereafter receiving interim compensation payments or reimbursement of expenses pursuant to any such Bankruptcy Court-approved procedure from the applicable provisions of bankruptcy law, including the requirements that such compensation or reimbursement be allowed on a final basis after the filing of appropriate fee applications, and, if applicable, any subsequent order of this Court requiring that such payments be disgorged, and/or (ii) as consent to the allowance of any fees and expenses referred to above, and shall not affect any right of the Lender to object to the reasonableness of such amounts.

12.　　<u>Restriction on Use of Funds</u>.　Notwithstanding anything herein to the contrary, no proceeds from the DIP Loans, DIP Collateral, Cash Collateral, or proceeds thereof, or any portion of the Carve-Out may be used by any of the Debtors, any Committee, and/or any trustee appointed in these Chapter 11 Cases, or any other person, party or entity to (a) request authorization to obtain postpetition loans or other financial accommodations pursuant to Section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than from the DIP Lenders; (b) assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity, the Lender, or any of its respective officers, designees, directors, employees, agents, attorneys, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, or action, including, without limitation, (i) any Avoidance Actions or other actions arising under chapter 5

17

of the Bankruptcy Code against the Lender; (ii) any action relating to any act, omission or aspect of the relationship between the Lender and the Debtors and their affiliates; (iii) any action with respect to the validity and extent of the obligations under the DIP Note or the Prepetition Indebtedness, or the validity, extent, and priority of the Postpetition Liens; (iv) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the Postpetition Liens; and/or (v) any action that has the effect of preventing, hindering or delaying (whether directly or indirectly) the Lender in respect of their liens and security interests in the DIP Collateral, Cash Collateral or the Prepetition Collateral; and/or (c) pay any Claim of a Creditor (as such terms are defined in the Bankruptcy Code) without the prior written consent of the Lender.

13. <u>Automatic Stay Modified</u>. Subject to Paragraph 13(a) below, the automatic stay provisions of Section 362 of the Bankruptcy Code are vacated and modified without further application or motion to, or order from the Court to the extent necessary to permit the Lender, upon the occurrence of a Termination Event, and without any interference from any Debtor or any other party interest but subject to three (3) business days' prior written notice (which may be delivered by electronic mail) (the "<u>Remedies Notice Period</u>") to the Debtors, their counsel, counsel to any Committee and counsel to the U.S. Trustee, to exercise all rights and remedies provided for in the DIP Note, this Interim Order or under other applicable bankruptcy and nonbankruptcy law to the extent permitted under the DIP Note and this Interim Order including, without limitation, the Lender's right to (i) terminate the commitments under the DIP Note, (ii) cease making DIP Loans and/or suspend or terminate the advances under the DIP Note and (iii) declare all obligations under the DIP Note immediately due and payable and/or (iv) take any actions reasonably calculated to preserve or safeguard the DIP Collateral or to prepare the DIP Collateral for sale; provided, however, that immediately upon the occurrence

of a Termination Event or a default by any of the Debtors of any of their obligations under this Interim Order or the DIP Note, the Debtor, for the benefit of the Lender, may charge interest at the default rate set forth in the DIP Note without being subject to the Remedies Notice Period but subject to review by this Court.

(a)     The automatic stay of Section 362(a) of the Bankruptcy Code, to the extent applicable, shall be deemed terminated without the necessity of any further action by the Court in the event that the Debtors, the Committee if any, and/or the U.S. Trustee have not obtained an order from this Court to the contrary prior to the expiration of the Remedies Notice Period.

(b)     The Debtors, the Committee and/or the U.S. Trustee shall have the burden of proof at any hearing on any request by them to reimpose or continue the automatic stay of Section 362(a) of the Bankruptcy Code or to obtain any other injunctive relief, and the sole issue at any hearing to re-impose the automatic stay or to obtain any other injunctive or other relief shall be limited to whether or not a Termination Event has occurred.

(c)     Subject to the Remedies Notice Period and Paragraph 15(a) the automatic stay pursuant to Section 362 of the Bankruptcy Code shall be further modified, to the extent necessary, to permit the Lender without further application or motion, or order from the Court, to foreclose or otherwise enforce their security interests in or liens on any or all of the DIP Collateral and/or the Prepetition Collateral and/or to exercise any other default-related rights and remedies under the DIP Note or this Interim Order and neither Section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the Lender from exercising or enforcing such default-related rights and remedies, regardless of any change in circumstances (whether or not foreseeable).

(d)     If the Lender is entitled, and has elected in accordance with the provisions hereof, to enforce its liens or security interests or exercise any other default-related remedies, and provided that the Lender, in its sole discretion, has made available to the Debtors (through additional DIP Loans or by consenting to the Debtors' use of Cash Collateral) sufficient funds to pay the reasonable and necessary costs thereof, if any, the Debtors shall cooperate with the Lender in connection with such enforcement by, among other things, (i) providing at all reasonable times access to the Debtors' premises to representatives or agents of the Lender, (ii) providing the Lender and their representatives or agents, at all reasonable times access to the Debtors' books and records and any information or documents requested by the Lender or its respective representatives, (iii) performing all other obligations set forth in the DIP Note, and (iv) taking reasonable steps to safeguard and protect the DIP Collateral, and the Debtors shall not otherwise interfere with or actively encourage others to interfere with the Lender's enforcement of rights.

(e)     This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Interim Order and relating to the application, re-imposition or continuance of the automatic stay of Section 362(a) of the Bankruptcy Code or other injunctive relief requested.

(f)     Upon the occurrence and during the continuance of Termination Event and the expiration of any Remedies Notice Period, the Lender shall have no further obligation to provide financing under the DIP Note and no obligation to permit the continued use of Cash Collateral.

(g)     Upon the occurrence and during the continuance of a Termination Event, the Lender may at all times continue to collect and sweep cash as provided herein.

(h)     This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Interim Order and relating to the application, re-imposition or continuance of the automatic stay of Section 362(a) of the Bankruptcy Code, use of Cash Collateral, or other injunctive relief requested.

(i)     Neither Section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the exercise, enjoyment and enforcement of any rights, benefits, privileges and remedies set forth in this Paragraph 15 regardless of any change in circumstances.

## ADDITIONAL PROVISIONS COMMON TO DIP FINANCING AND USE OF CASH COLLATERAL AUTHORIZATION

14.     _Equities of the Case Waiver_.  Subject to entry of the Final Order: (a) the Lender shall each be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and (b) no person may assert an "equities of the case" claim under Section 552(b) of the Bankruptcy Code against the Lender with respect to proceeds, product, offspring or profits of any of the DIP Collateral.

15.     _Additional Perfection Measures_.   (a) The Postpetition Liens shall be perfected by operation of law immediately upon entry of this Interim Order.  Neither the Debtors nor the Lender shall be required to enter into or obtain landlord waivers, mortgagee waivers, bailee waivers, warehouseman waivers or other waiver or consent, or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction (including, trademark, copyright, trade name or patent assignment filings with

the United States Patent and Trademark Office, Copyright Office or any similar agency with respect to intellectual property, or filings with any other federal agencies/authorities), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the Postpetition Liens.

(b)     If the Lender, each in its sole discretion, chooses to obtain consents from any landlord, licensor or other party in interest, to file mortgages, financing statements, notices of lien or similar instruments, or to otherwise record or perfect such security interests and liens:

(i)     all such documents shall be deemed to have been recorded and filed as of the time and on the date of entry of this Interim Order; and

(ii)     no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.

(c)     In lieu of obtaining such consents or filing any such mortgages, financing statements, notices of lien or similar instruments, the Lender may choose to file a true and complete copy of this Interim Order in any place at which any such instruments would or could be filed, together with a description of the DIP Collateral (as defined and limited by Paragraph 8(a) above) and such filing by the Lender shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of this Interim Order.

16.     <u>Application of DIP Collateral Proceeds</u>.  Upon a Termination Event, all proceeds of DIP Collateral shall be applied as follows: (a) <u>first</u>, to fund the Carve-Out; (b) <u>second</u>, to repay all fees and expenses incurred by the Lender pursuant to the DIP Note; (c) <u>third</u>, to repay the obligations under the DIP Note, and (d) <u>fourth</u>,  thereafter, to the Debtors' estates.

17. <u>Access to DIP Collaterall</u>. Upon three (3) business days written notice to the landlord, leinholder, licensor or other third party owner of any leased or licensed premises or intellectual property that a Termination Event under this Interim Order has occurred and is continuing, the Lender may exercise its rights and remedies under the DIP Note and applicable law, provided, that, the Lender's right to use any licensed DIP Collateral or to occupy any leased premises for the purpose of removing, selling or otherwise disposing of the DIP Collateral shall be limited to (i) those rights which the Lender may have under applicable nonbankruptcy law; (ii) those rights to which the applicable landlord or licensor agrees in writing with the Lender; or(iv) such rights as may be ordered by this Court upon motion and notice to the applicable landlord or licensor with opportunity to respond that is reasonable under the circumstances; provided, however, that the Lender shall only pay and amount equal to the Debtors' obligations payable during the period of such occupancy or use by the Lender, as the case may be, calculated on a per diem basis. Nothing herein shall require the Debtors or the Lender to assume any lease or license under Section 365(a) of the Bankruptcy Code as a precondition to the rights afforded to the Lender in this Paragraph 21.

18. <u>Cash Management Systems</u>. The Debtors are authorized and directed to maintain their cash management system in a manner consistent with the DIP Note, this Interim Order, and the order of this Court approving the maintenance of the Debtors' cash management system, provided, however, that such order is on terms and conditions reasonably acceptable to the Lender and such order is not inconsistent with the terms specified herein or the DIP Note.

19. <u>Budget Maintenance</u>. (a) The Budget shall at all times be in form and substance acceptable to the Lender and approved in writing by the Lender, each in reasonable discretion. The Debtors shall provide updates to the Budget on a weekly basis comparing their

actual financial performance to that set forth in the Budget, and otherwise in form and substance reasonably satisfactory to the Lender. The Lender shall have no obligation with respect to the Debtors' use of the proceeds of the DIP Loans or Cash Collateral, and shall not be obligated to ensure or monitor the Debtors' compliance with the Budget or to pay (directly or indirectly) any expenses incurred or authorized to be incurred pursuant to the Budget. Funds borrowed under the DIP Note and Cash Collateral used under this Interim Order shall be used by the Debtors in accordance with this Interim Order. The DIP Lenders consent to the Budget shall not be construed as consent to the use of any Cash Collateral or a commitment to continue to provide DIP Loans after the occurrence of a Termination Event, regardless of whether the aggregate funds shown on the Budget have been expended.

(b) The Budget may be modified or supplemented from time to time only by written agreement of the Lender and the Debtors without the need of further notice, hearing or order of this Court. A copy of any modifications or supplements will be provided by the Debtors to counsel to any Committee and the U.S Trustee.

20. <u>Access to Books & Records</u>. The Debtors (and/or their legal and financial advisors) will (a) keep proper books, records and accounts in accordance with GAAP in which full, true and correct entries shall be made of all dealings and transactions in relation to its business and activities, (b) cooperate, consult with, and provide to the Lender all such information as required or allowed under the DIP Note, the provisions of this Interim Order or that is afforded to any Committee and/or such Committee's respective legal or financial advisors, (c) permit upon one (1) business day's notice, representatives of the Lender to visit and inspect any of their respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct a collateral audit and analysis of their respective

inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations and accounts with their respective officers, employees and independent public accountants as often as may reasonably be desired, and (d) permit representatives of the Lender to consult with and advise the Debtors' management on matters concerning the general status of the Debtors' business, financial condition and operations.

21.     Successors and Assigns.  The DIP Note and the provisions of this Interim Order shall be binding upon the Debtors, the Lender, and each of their respective successors and assigns, and shall inure to the benefit of the Debtors, the Lender, and each of their respective successors and assigns including, without limitation, any trustee, responsible officer, estate administrator or representative, or similar person appointed in a case for any Debtor under any chapter of the Bankruptcy Code.  The provisions of this Interim Order shall also be binding on all of the Debtors' creditors, equity holders, and all other parties in interest.

22.     Binding Nature of Agreement.  The DIP Note to which any of the Debtors are or will become a party shall constitute legal, valid, and binding obligations of the Debtors party thereto, enforceable in accordance with their terms.  The DIP Note has been or will be properly executed and delivered to the Lender by the Debtors, no later than one day after entry of this Interim Order.  The rights, remedies, powers, privileges, liens, and priorities of the Lender provided for in this Interim Order and in the DIP Note shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation order), by any plan of reorganization or liquidation in these Chapter 11 Cases, by the dismissal or conversion of these Chapter 11 Cases or in any subsequent case under the Bankruptcy Code unless and until the obligations under the DIP Note have first been indefeasibly paid in full in cash (or satisfied by

application of the Credit Bid) and completely satisfied and the commitments terminated in accordance with the DIP Note.

23.    Subsequent Reversal or Modification.    This Interim Order is entered pursuant to Section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the Lender all protections afforded by Section 364(e) of the Bankruptcy Code.    If any or all of the provisions of this Interim Order are hereafter reversed, modified, or vacated, that action will not affect (a) the validity of any obligation, indebtedness or liability incurred hereunder by any of the Debtors to the Lender, prior to the date of receipt by the Lender of written notice of the effective date of such action or (b) the validity and enforceability of any lien or priority authorized or created under this Interim Order or pursuant to the DIP Note.    Notwithstanding any such reversal, stay, modification or vacatur, any postpetition indebtedness, obligation or liability incurred by any of the Debtors to the Lender prior to written notice to the Lender of the effective date of such action, shall be governed in all respects by the original provisions of this Interim Order, and the Lender, shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Note with respect to all such indebtedness, obligations or liability.

24.    Collateral Rights.    In the event that any party who holds a lien or security interest in DIP Collateral that is junior and/or subordinate to the Postpetition Liens in such DIP Collateral receives or is paid the proceeds of such DIP Collateral, or receives any other payment with respect thereto from any other source, (a) prior to the indefeasible payment in full in cash (or satisfaction by application of the Credit Bid) and complete satisfaction of all obligations under the DIP Note and termination of the commitment in accordance with the DIP Note, and (b) prior to the indefeasible payment in full in cash or satisfaction of all the Prepetition Indebtedness under the Prepetition Loan Documents in a manner acceptable to the Prepetition Lenders, such

junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral in trust for the Lenderand shall immediately turnover such proceeds for applicationto the obligations under the DIP Note and this Interim Order until indefeasibly paid in full in cash (or satisfied through application of the Credit Bid) and completely satisfied in full.

25. <u>Credit Bid Rights</u>. The Lender, and its respective successors and assigns or designees, in their individual capacities or collectively, shall be permitted to credit bid pursuant to Section 363(k) of the Bankruptcy Code at the sale of the Debtors' assets up to the amount of all outstanding obligations under the DIP Note.

26. <u>No Waiver</u>. This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the Lender may have to bring or be heard on any matter brought before this Court.

27. <u>Conversion/Dismissal</u>. If an order dismissing or converting any of these Chapter 11 Cases under Sections 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide that (a) the Postpetition Liens and the DIP Superpriority Claim shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in this Interim Order and the DIP Note until all obligations under the DIP Note are satisfied pursuant to the terms of this Paragraph and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the Postpetition Liens and the DIP Superpriority Claim.

28. <u>Limits on Liability</u>. Nothing in this Interim Order or in any of the DIP Note, shall in any way be construed or interpreted to impose or allow the imposition upon the Lender of any liability for any claims arising from any and all activities by the Debtors or any of

their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts.

29. _Priority of Terms_. To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Note, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" the DIP Note, the terms and provisions of this Interim Order shall govern.

30. _No Third Party Beneficiary_. Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

31. _Survival_. Except as otherwise provided herein, (a) the protections afforded to the Lender under this Interim Order, and any actions taken pursuant thereto, shall survive the entry of an order (i) dismissing any of the Chapter 11 Cases or (ii) converting any of the Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code, and (b) the Postpetition Liens, and the DIP Superpriority Claim shall continue in the Chapter 11 Cases, in any such successor case or after any such dismissal. Except as otherwise provided herein, the Postpetition Liens and the DIP Superpriority Claim shall maintain their priorities as provided in this Interim Order, the Final Order, and the DIP Note, and not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of indebtedness (except with respect to any additional financing to be provided by the Lender in accordance with the Final Order), or any conversion of any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code or dismissal of any of these Chapter 11 Cases, or by any other act or

omission until (i) all obligations under the DIP Note are indefeasibly paid in full in cash (or by application of the Credit Bid) and completely satisfied, and the commitments under the DIP Note are terminated in accordance therewith.

32.    Adequate Notice.    The notice given by the Debtors of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2), and the local rules of this Court, and, under the circumstances was adequate and sufficient.    No further notice of the request for the relief granted at the Interim Hearing is required.    The Debtors shall promptly mail copies of this Interim Order and notice of the Final Hearing to the Notice Parties, any known party effected by the terms of the Final Order, and any other party requesting notice after the entry of this Interim Order, within 1 business day after the entry of this Interim Order.    Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with the Court and served so as to be actually received no later than five (5) days prior to the Final Hearing by the following: (i) counsel to the Debtors, Elliott Greenleaf, LLP, 1105 North Market Street, Suite 1700, Wilmington, Delaware 19801, Attention: Rafael Zahralddin-Aravena, (ii) counsel to the Lender,  Drinker Biddle & Reath LLP, One Logan Square, Suite 2000, Philadelphia, PA 19103, Attention: Michael Jordan and (iii) the U.S. Trustee.    The Court shall conduct a Final Hearing on the Motion commencing on August 12, 2009 at 9:30 a.m.

33.    Entry of Interim Order; Effect.    This Interim Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Fed. R. Bankr. P. 6004(g), 7062, 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Interim Order on the Court's docket in these Chapter 11 Cases.

34. <u>Retention of Jurisdiction</u>. This Court shall retain jurisdiction overall all matters pertaining to the implementation, interpretation and enforcement of this Interim Order.

35. <u>Binding Effect of Interim Order</u>. The terms of this Interim Order shall be binding on any trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code.

Dated: Wilmington, Delaware
      June ___, 2011

_____

THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE

# Exhibit A

Azealeo Spectrum, LLC.
Thirteen Week DIP Budget

| | Week Ended 6/17/2011 | Week Ended 6/24/2011 | Week Ended 7/1/2011 | Week Ended 7/8/2011 | Week Ended 7/15/2011 | Week Ended 7/22/2011 | Week Ended 7/29/2011 | Week Ended 8/5/2011 | Week Ended 8/12/2011 | Week Ended 8/19/2011 | Week Ended 8/26/2011 | Week Ended 9/2/2011 | Week Ended 9/9/2011 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Gross Receipts** | | | | | | | | | | | | | | |
| Customer Receipts | 88,239 | 87,863 | 87,504 | 87,164 | 86,827 | 86,493 | 86,162 | 85,833 | 85,513 | 85,769 | 85,007 | 84,747 | 84,489 | 1,121,179 |
| Sale of Equipment to Resellers | - | 490 | 490 | 490 | 490 | 490 | 490 | 490 | 530 | 580 | 580 | 580 | 580 | 6,780 |
| Gross Receipts | 88,239 | 88,353 | 87,994 | 87,654 | 87,317 | 86,983 | 86,652 | 86,323 | 86,043 | 85,849 | 85,587 | 85,327 | 85,069 | 1,127,409 |
| | | | | | | | | | | | | | | |
| Operating Distributions | 14,628 | 88,207 | 207,449 | 99,904 | 18,512 | 95,222 | 214,279 | 111,942 | 23,495 | 95,259 | 45,173 | 301,728 | 30,500 | 1,346,328 |
| Operating Cash Flow | 73,610 | 147 | (119,456) | (12,250) | 68,806 | (8,238) | (127,626) | (25,619) | 62,598 | (9,410) | 40,414 | (216,401) | 54,569 | (218,919) |
| | | | | | | | | | | | | | | |
| Restructuring Disbursements | 137,750 | 92,083 | 92,083 | (104,333) | 2,555 | (74,489) | (193,678) | (91,865) | (3,862) | (75,860) | (25,836) | (282,681) | (11,681) | (1,229,169) |
| Net Cash Flow | (64,140) | (91,937) | (211,539) | (104,333) | | | | | 66,250 | 66,250 | 66,250 | 66,250 | 66,250 | 1,010,250 |
| | | | | | | | | | | | | | | |
| **Cash Rollforward** | | | | | | | | | | | | | | |
| Beginning Cash | 29,250 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 29,250 |
| Net Cash Flow | (64,140) | (91,937) | (211,539) | (104,333) | 2,555 | (74,489) | (193,678) | (91,865) | (3,862) | (75,860) | (25,836) | (282,681) | (11,681) | (1,229,169) |
| Income (Decrease) in Float | (34,860) | (16,937) | (136,539) | (29,333) | 77,555 | (511) | (118,678) | (16,865) | 71,318 | (806) | (207,681) | 63,319 | (1,106,919) | |
| DIP Funding | 109,860 | 93,681 | 213,653 | 108,673 | 2,917 | 79,991 | 200,213 | 106,296 | 13,148 | 85,763 | 36,327 | 293,550 | 25,508 | 1,362,604 |
| 2.5 Core Cumul Draw Before Interest | 75,000 | 76,145 | 77,114 | 79,340 | 80,472 | 80,502 | 81,335 | 83,427 | 84,466 | 84,653 | 85,461 | 85,869 | 88,527 | 167,685 |
| DIP Interest | - | 1,145 | 2,114 | 4,340 | 5,472 | 5,502 | 6,335 | 8,421 | 9,466 | 9,653 | 10,491 | 10,869 | 13,927 | 87,685 |
| Ending Cash After Interest | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 |
| | | | | | | | | | | | | | | |
| Cumulative DIP Financing | 109,860 | 202,931 | 416,624 | 525,297 | 528,214 | 608,205 | 808,418 | 908,708 | 921,856 | 1,007,119 | 1,043,446 | 1,336,996 | 1,362,604 | 1,362,604 |
| | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Compensation - Taxes and Benefits | 72,974 | 72,974 | 8,750 | 72,974 | 72,974 | 72,974 | 42,240 | 81,724 | 72,974 | 72,974 | 81,724 | 81,724 | 81,724 | 464,995 |
| Bandwidth | | | 42,240 | | | | 74,108 | | | | 42,240 | 42,240 | | 126,720 |
| Tower Rental & Related Costs | | | 74,108 | | | | 74,108 | | | | 74,108 | 74,108 | | 222,324 |
| Property & Other Costs (1) | 666 | 666 | 29,965 | 665 | 665 | 665 | 29,965 | 665 | 665 | 665 | 29,965 | 665 | 665 | 96,543 |
| Equipment Maintenance & Replacement | 2,250 | 2,250 | 4,938 | 7,250 | 2,250 | 7,250 | 4,938 | 17,250 | 7,250 | 2,250 | 4,938 | 4,938 | 2,250 | 67,314 |
| Vendor Maintenance & Gas | 1,400 | 1,400 | 1,900 | 1,400 | 1,400 | 1,400 | 1,900 | 1,400 | 1,400 | 1,400 | 1,900 | 1,900 | 1,400 | 19,700 |
| 2.5 Core Cumul Lease Cost (1) | | | 20,111 | | | | 20,111 | | | | 20,111 | 20,111 | | 60,333 |
| Professional Service Fees | 4,000 | 4,000 | 10,650 | 7,500 | 7,500 | 6,250 | 9,150 | 4,250 | 7,500 | 11,250 | 18,150 | 34,875 | 19,500 | 145,075 |
| Billing Fees | 3,643 | 3,047 | 3,105 | 3,023 | 3,910 | 3,000 | 3,988 | 2,977 | 2,968 | 2,961 | 2,862 | 2,843 | 2,934 | 39,883 |
| Sales Support & Commissions | 1,770 | 2,370 | 1,886 | 1,390 | 1,390 | 1,390 | 1,896 | 1,790 | 1,430 | 1,480 | 1,980 | 1,980 | 1,480 | 21,130 |
| Personal Property Tax and Other | 1,500 | 1,500 | 6,200 | 1,500 | 1,500 | 1,500 | 6,200 | 1,500 | 1,500 | 1,500 | 1,500 | 6,200 | 1,500 | 33,600 |
| Modem Box Repairs and purchases | | | 3,663 | | | | 20,399 | 786 | | | 18,777 | 8,771 | | 56,410 |
| Operating Disbursements | 14,628 | 88,207 | 207,449 | 99,604 | 95,222 | 95,222 | 214,279 | 111,942 | 23,495 | 95,259 | 45,173 | 301,728 | 30,500 | 1,346,328 |
| | | | | | | | | | | | | | | |
| **Restructuring Disbursements** | | | | | | | | | | | | | | |
| US Trustee Fees | 47,500 | 47,500 | 47,500 | | | | | | | | | | | 4,875 |
| Bankruptcy Counsel | 5,000 | 5,000 | 5,000 | | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 4,875 | 413,000 |
| Claims & Noticing Agent | | | | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 25,000 | 60,000 |
| DIP Counsel | 6,250 | 6,250 | 6,250 | | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 5,000 | 81,250 |
| Debtor Financial Advisors & Investment Bankers (2) | 20,000 | 20,000 | 20,000 | | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 6,250 | 260,000 |
| Committee Professionals | 13,333 | 13,333 | 13,333 | | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 20,000 | 130,000 |
| Total Bankruptcy Administration Fees | 73,750 | 92,083 | 92,083 | 92,083 | 66,250 | 66,250 | 66,250 | 66,250 | 66,250 | 66,250 | 66,250 | 66,250 | 71,125 | 951,125 |
| | | | | | | | | | | | | | | |
| DIP Commitment Fees | 64,000 | - | - | - | - | - | - | - | - | - | - | - | - | 64,000 |
| | | | | | | | | | | | | | | |
| Total Restructuring Disbursements | 137,750 | 92,083 | 92,083 | 92,083 | 66,250 | 66,250 | 66,250 | 66,250 | 66,250 | 66,250 | 66,250 | 66,250 | 71,125 | 1,015,125 |

(1) Estimated amounts are based on contractual amounts. The Company expects to reduce these amounts by negotiating reduced payment obligations.

(2) Debtor preliminary estimate. Actual expenses incurred may be significantly less. Investment banking services may be procured on a success basis with fees only being earned upon realization of funds.

151 685