# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Pegasus Rural Broadband, LLC, *et al.*,[1] | |
| Debtors. | Case No. 11-11772 (PJW) |
| | (Joint Administration Requested) |

## INTERIM ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), AND 364(e) AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364, AND (III) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)

This matter coming before this Court on the Debtors' Motion for Entry and Approval of Interim and Final Orders: (A) Authorizing and Approving Postpetition Financing, (B) Granting Liens and Security Interests and Providing Superpriority Administrative Expense Status, (C) Authorizing Use of Cash Collateral and Affording Adequate Protection, (D) Modifying Automatic Stay, and (E) Scheduling Final Hearing, Pursuant to 11 U.S.C. §§ 105, 362, 363 and 364 and Federal Rules of Bankruptcy Procedure 2002 and 4001(c) and (d) (the "Motion")[2], for interim and final orders seeking:

      1.    authorization for the Debtors to obtain secured postpetition financing (the "DIP Financing") of approximately $1,600,000.00 (the "DIP Facility") pursuant to the

---

[1] The Debtors are Xanadoo Holdings, Inc., a Delaware corporation; Xanadoo, LLC, a Delaware limited liability company; Pegasus Guard Band, LLC, a Delaware limited liability company; and Pegasus Rural Broadband, LLC, a Delaware limited liability company. Xanadoo Holdings, Inc. is the sole member of Xanadoo, LLC, Pegasus Guard Band, LLC, and Pegasus Rural Broadband, LLC. Xanadoo Holdings, Inc. is a wholly owned subsidiary of Xanadoo Spectrum, LLC.

[2] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Motion or the DIP Note, as applicable.

terms and conditions set forth in this interim order (the "Interim Order"), that certain Debtor-In-Possession Revolving Loan Promissory Note (as the same may be amended, supplemented, restated or otherwise modified from time to time the "DIP Note"), together with all agreements, documents, and instruments delivered in connection with the DIP Financing (the "DIP Loan Documents") by and among Xanadoo Spectrum, LLC and its subsidiaries, each a debtor and debtor-in-possession herein (together, the "Debtors") and Xanadoo Company (the "DIP Lender");

      2.      authorization for the Debtors to execute the DIP Note and related loan documents and to perform such other acts as may be necessary or desirable in connection with the DIP Financing, which DIP Note shall be junior and subordinate in all rights and respects to the Prepetition Indebtedness (defined below) owed to the Prepetition Secured Parties;

      3.      authorization for the Debtors to grant to the DIP Lender priority liens upon and security interests in substantially all of the Debtors' assets, to secure all obligations owing under the DIP Note, which liens shall be junior and subordinate in all rights and respects to the Prepetition Secured Parties' prepetition liens and security interests in the Debtors' assets;

      4.      authorization to grant allowed superpriority administrative expense claims to the DIP Lender;

      5.      authorization for the Debtors to use Cash Collateral (as defined herein);

      6.      to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of this Interim Order authorizing the Debtors to borrow up to an aggregate principal amount of $1,600,000.00 pursuant to the terms of this Interim Order and the DIP Note until entry of the Final Order (as defined below); and

to schedule, pursuant to Bankruptcy Rule 4001(c)(2), a hearing (the "Final Hearing") to consider entry of a final order (the "Final Order") authorizing, on a final basis, the DIP Financing and all relief requested in the Motion; and based upon all the pleadings files with the Court and the evidence presented and the entire record herein; the Court having heard and resolved or overruled all objections to the interim relief requested in the Motion; and the Court having noted the appearances of all parties in interest; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and creditors; and after due deliberation and consideration, based upon the record established by the Debtors at the hearing to consider the Motion, the acknowledgements and stipulations, and good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND:[3]**

A.        Petition Date. On June 10, 2011 (the "Petition Date"), the Debtors commenced their chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their affairs as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee of creditors holding unsecured claims appointed under Section 1102(a) of the Bankruptcy Code (the "Committee") has been appointed in any of the Chapter 11 Cases.

B.        Jurisdiction; Venue. The Court has jurisdiction over the Chapter 11 Cases and the Debtors' property pursuant to 28 U.S.C. Section 1334. This is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2)(D). Venue of the Chapter 11 Cases and the Motion is proper under 28 U.S.C. Sections 1408 and 1409.

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

C.     Notice.  Notice of the Motion, the relief requested therein and the Interim

Hearing (the "Notice") has been served pursuant to Federal Rule of Bankruptcy Procedure

4001(c)(2) and was served by the Debtors on (i) the Debtors' twenty largest unsecured creditors

on a consolidated basis, (ii) counsel to the DIP Lender, (iii) any parties that have filed a notice of

appearance in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002, (iv) all of the landlords

of the Debtors' commercial real properties, (v) all known holders of liens upon the Debtors'

assets, (vi) the United States Attorney for the District of Delaware, and (vii) the United States

Trustee for the District of Delaware.

D.     Prepetition Indebtedness.  For purposes of this Interim Order, (i) the term

"Prepetition Indebtedness" shall mean the Obligations as defined in the SPA, as of the Petition

Date, owed under the Securities Purchase Agreement (the "SPA") with BPC AS LLC (as

successor to Beach Point Capital Management LP and Post Advisory Group, LLC) as Collateral

Agent, and the Purchasers (as defined in the SPA) (collectively with their successors the

"Prepetition Secured Parties") and the Transaction Documents (as defined in the SPA).

E.     Debtors', DIP Lender's and Prepetition Secured Parties' Acknowledgments &

Stipulations.  The Debtors, the DIP  Lender, and the Prepetition Secured Parties acknowledge,

represent, stipulate, and agree that:

1.     the Debtors have obtained all authorizations, consents and approvals

required to be obtained from, and have made all filings with and given all notices required to

be given to, all federal, state and local governmental agencies, authorities and instrumentalities

in connection with the execution, delivery, validity and enforceability of the DIP Loan

Documents and the use of Cash Collateral (defined below) to which any Debtor is a party;

4

2.      the Debtors and the DIP Lender have waived, discharged and released any right they may have to challenge, and neither the Debtors, the DIP Lender nor any of their affiliates or insiders, may investigate, initiate or prosecute any challenge to, the Prepetition Indebtedness, the Prepetition Liens (as defined below) or the Prepetition Collateral (as defined below) and to assert any offsets, defenses, claims, objections, challenges, causes of action and/or choses of action against the Prepetition Secured Parties with respect to the Prepetition Indebtedness, the Prepetition Liens and the Prepetition Collateral;

3.      Unless expressly stated otherwise herein, this Interim Order is without prejudice to, and the Prepetition Secured Parties shall be deemed to have reserved and not waived, any and all of the Prepetition Secured Parties rights and remedies under the Bankruptcy Code, applicable nonbankruptcy law, and the Transaction Documents including, but not limited to, the Prepetition Secured Parties' right (i) to seek adequate protection from the Debtors, (ii) to challenge any request by the Debtors to extend their plan filing and/or solicitation exclusivity periods, (iii) to seek relief from the automatic stay, (iv) to seek dismissal of any of the Debtors' bankruptcy cases, (v) to challenge the use of Cash Collateral (defined below) or further borrowings under the DIP Facility beyond the Interim Period (defined below), and (vi) to challenge any of the findings or conclusions of law set forth herein at the Final Hearing or any subsequent interim hearing.

4.      Fees, costs and interest (including interest at the default rate) related to the Prepetition Indebtedness shall accrue but not be paid during the Interim Period.

F.      Cash Collateral.  For purposes of this Interim Order, the term "Cash Collateral" shall mean and include all "cash collateral," as defined in Section 363 of the Bankruptcy Code, in which any Prepetition Secured Party or the DIP Lender have, a lien,

security interest or other interest (whether existing on the Petition Date, arising pursuant to this Interim Order, or otherwise) and shall include, without limitation:

    1.    all cash proceeds arising from the collection, sale, lease or other disposition, use or conversion of any property upon which any Prepetition Secured Parties, holds a lien or a replacement lien, whether as part of the Prepetition Collateral or pursuant to an order of the Court or applicable law or otherwise, and whether such property has been converted to cash, existed as of the commencement of these Chapter 11 Cases, or arose or was generated thereafter; and

    2.    all of the respective deposits, refund claims and rights in retainers of the Debtors upon which any Prepetition Secured Party or the DIP Lender holds a lien or replacement lien, whether as part of the Prepetition Collateral or pursuant to an order of the Court or applicable law or otherwise;

    3.    provided, however, that, if a Debtor sells or disposes of any assets that results in the cash proceeds , unless both Prepetition Secured Parties and the DIP Lenders agree otherwise, such Debtor shall apply such proceeds to prepay the Prepetition Secured Parties in an amount equal to 100% of such proceeds until the Prepetition Indebtedness are indefeasibly paid in full, net of (A) reasonable commissions and other reasonable and customary transaction costs, fees and expenses properly attributable to such transaction and payable by the Debtors in connection therewith (in each case, payable only to non-affiliates or non-insiders of the Debtors), (B) transfer or sales taxes, (C) and other payments from the proceeds as authorized by the Bankruptcy Court and approved by both Prepetition Secured Parties and the DIP Lender in writing, and (D) amounts required, under applicable law, to be applied to the repayment of debt (other than the Prepetition Indebtedness) secured by such assets sold.

G.      <u>Purpose and Necessity of Financing & Use of Cash Collateral</u>. The Debtors require the DIP Financing to operate their businesses and to fund, among other things, ongoing working capital requirements, and for other purposes permitted by the DIP Note. The Debtors will suffer immediate and irreparable harm if the Motion is denied. The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under Section 503 of the Bankruptcy Code, or other financing under Sections 364(c) or (d) of the Bankruptcy Code, on equal or more favorable terms than those set forth in the DIP Loan Documents. A loan facility in the amount provided by the DIP Loan Documents is unavailable without granting to the DIP Lender, superpriority claims, liens, and security interests, pursuant to Sections 364(c)(1), (2), (3), and 364(d) of the Bankruptcy Code, as provided for in this Interim Order and the DIP Note. The Debtors have concluded, in the exercise of their prudent business judgment, that the DIP Facility represents the best working capital financing available to them at this time.

H.      <u>Good Cause Shown</u>. Good cause has been shown for entry of this Interim Order. The ability of the Debtors to obtain sufficient working capital and liquidity under the DIP Note and use of Cash Collateral is vital to the Debtors' estates and creditors. The liquidity to be provided under the DIP Note and through the use of the Cash Collateral will enable the Debtors to continue to operate their businesses in the ordinary course and preserve the value of the Debtors' businesses. Among other things, entry of this Interim Order is intended to maximize value of the Debtors' assets and to avoid immediate and irreparable harm to, and is in the best interests of, the Debtors, their estates and their creditors. The Debtors' estates will be immediately and irreparably harmed if this Interim Order is not entered.

I.      <u>Good Faith</u>. The terms of the DIP Note, including the interest rates and fees applicable thereto and intangible factors, are more favorable to the Debtors than those available

from alternative sources. Based upon the record before the Court, the DIP Note has been negotiated in good faith and at arm's-length among the Debtors and the DIP Lender. Any financial accommodations made to the Debtors by the DIP Lender pursuant to this Interim Order and the other DIP Note shall be deemed to have been extended by the DIP Lender in good faith, as that term is used in Section 364(e) of the Bankruptcy Code, and the DIP Lender shall be entitled to all protections afforded thereby.

J.        Fair Consideration & Reasonably Equivalent Value. The Debtors will receive and have received fair and reasonable consideration in exchange for access to the postpetition loans (the "DIP Loans"), the use of Cash Collateral, and all other financial accommodations provided under the DIP Note and this Interim Order. The terms of the DIP Note are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

K.        Immediate Entry of Interim Order. The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2). The permission granted herein to enter into the DIP Loan Documents and to obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtors. This Court concludes that entry of this Interim Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for access to the financing necessary for the continued flow of supplies and services to the Debtors necessary to sustain the operation of the Debtors' existing businesses and further enhance the Debtors' prospects for a successful restructuring.

L.        Budget for Use of Cash Collateral and DIP Financing. The Debtors have delivered to the DIP Lender a detailed budget that sets forth projected cash receipts and cash

disbursements (by line item) on a weekly basis for the time period from and including the Petition Date through September 9, 2011, a copy of which is attached hereto as Exhibit A (the "Budget"). The Budget may be modified or supplemented from time to time by written agreement of the Prepetition Secured Parties, the DIP Lender and the Debtors without the need of further notice, hearing or order of this Court. The consent of the DIP Lender to any Budget shall not be construed as a commitment to provide DIP Loans or to permit the use of Cash Collateral after the occurrence of a Termination Event (as defined below) under this Interim Order.

Based upon the foregoing:

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. Disposition. The Motion is granted on an interim basis on the terms set forth in this Interim Order. Any objection to the interim relief sought in the Motion that has not previously been withdrawn or resolved is hereby overruled on its merits. Subject to the reservation of the Prepetition Secured Parties' rights as set forth herein, this Interim Order shall be valid, binding on all parties-in-interest, and fully effective immediately upon entry notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014. The terms and provisions of the DIP Note are approved on an interim basis as set forth herein. The term of this Interim Order, the DIP Note, and the use of Cash Collateral authorized hereunder shall expire, and the DIP Note made pursuant to the this Interim Order and the DIP Note will mature, and together with all interest thereon and any other obligations accruing under the DIP Note, will become due and payable (unless such obligations become due and payable earlier pursuant to the terms of the DIP Note and this Interim Order by way of acceleration or otherwise) on December 11, 2012 if the Final Order has not been entered by the Court prior to such date, or (b) upon the occurrence of a Termination Event (as defined below).

# DIP FINANCING AND CASH COLLATERAL AUTHORIZATION

2.  <u>Authorization to Obtain Financing & Use of Cash Collateral</u>.

(a)     The Debtors are hereby authorized, on an interim basis for the thirteen-week period reflected in the Budget (the "<u>Interim Period</u>"), to use Cash Collateral and to incur the obligations under the DIP Note subject to the terms of the Budget, the DIP Note and this Interim Order, with borrowings under the DIP Note limited to the aggregate principal amount of up to $1,600,000.00 (the "<u>Maximum Interim Borrowing</u>").

(b)     For each period beginning on the Petition Date and ending on the last day of each seven-day period set forth in the Budget, (i) the aggregate disbursements by the Debtors (other than for Professional Fees (as defined below)) for any Budget period shall not exceed, without the prior written consent of the DIP Lender, the aggregate amount budgeted for such period as set forth in the Budget by more than a factor of ten percent (10%) of such aggregate amount or (ii) the Debtors' expenditures (other than for Professional Fees) shall not exceed the Budget amount for any disbursement line item by more than a factor of ten percent (10%) of the budgeted amount for such line item.  The Debtor may utilize savings in any one line item (other than Professional Fees) in the Budget that exceed the permitted variance in another line item (other than Professional Fees) pursuant to the terms of the DIP Note.

(c)     To the extent any additional line item is added to the Budget in accordance with the provisions of this Interim Order, such line items shall be subject to such variance provisions as the Debtors and the DIP Lender agree.

(d)     The DIP Lender (i) may assume the Debtors will comply with the Budget, (ii) shall have no duty to monitor such compliance and (iii) shall not be obligated

to pay (directly or indirectly) any unpaid expenses incurred or authorized to be incurred pursuant to any Budget. All advances and extensions of credit shall be based upon the terms and conditions of the DIP Note, as the same may be adjusted from time to time. Subject to the terms and conditions of this Interim Order, the DIP Lender shall have the right but not the obligation to extend credit independent of any Budget line item restrictions on loan availability set forth in the DIP Note, and all such DIP Loans shall be entitled to the benefits and protections of this Interim Order.

    3. <u>Authority to Execute and Deliver Necessary Documents</u>.

     (a) The Debtors are authorized and directed to negotiate, prepare, enter into, and deliver the DIP Note and any necessary related loan documents, in each case including any amendments thereto. Each of the Debtors is further authorized and directed to negotiate, prepare, enter into and deliver any UCC financing statements, pledge and security agreements, and mortgages or deeds of trust encumbering all of the DIP Collateral and securing all of the Debtors' obligations under the DIP Note and this Interim Order, provided that the liens and security interests created by such UCC financing statements, pledge and security agreements and mortgages or deeds of trust, and the obligations secured thereby, shall be junior and subordinate in all rights and respects to the Prepetition Liens and the Prepetition Indebtedness.

     (b) The Debtors are hereby further authorized and directed to (i) perform all of its obligations under the DIP Note, and such other agreements as may be required by the necessary and related loan documents to give effect to the terms of the financing provided for therein and in this Interim Order, and (ii) perform all acts required under the DIP Note and this Interim Order.

4.     Valid & Binding Obligations.  All obligations under the DIP Note shall constitute valid and binding obligations of each Debtor, enforceable against each of them and each of their successors and assigns, in accordance with their terms and the terms of this Interim Order, and no obligation, payment, transfer or grant of a security under the DIP Note or this Interim Order shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under Section 502(d) of the Bankruptcy Code) or subject to any avoidance, reduction, set-off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity, except as otherwise set forth herein; provided that such obligations shall remain junior and subordinate in all rights and respects to the Prepetition Indebtedness.

5.     Termination of DIP Note and Cash Collateral Usage.  Notwithstanding anything in this Interim Order to the contrary, but subject to paragraph 17 below, the DIP Note and any right that the Debtors have to use Cash Collateral (but no other provision of the DIP Note or this Interim Order), shall immediately and automatically terminate (except as the DIP Lender may otherwise agree in writing), and all obligations under the DIP Note shall be immediately due and payable, upon the earliest to occur of the following (each, a "Termination Event"):

(a)     a Final Order has not been entered on the docket by December 9, 2011;

12

(b)     the date of final indefeasible payment and satisfaction in full in cash (or by application of the Credit Bid) of the obligations under the DIP Note and the termination of the commitment under the DIP Note;

(c)     the effective date of any confirmed plan of reorganization in any or all of the Chapter 11 Cases;

(d)     the consummation of a sale or other disposition of all or substantially all of the assets of the Debtors whether done by one or a series of transactions;

(e)     immediately upon the Debtors' receipt of written notice from the DIP Lender of the occurrence of any violation by the Debtors of this Interim Order or breach of any negative covenant or affirmative covenant under the DIP Note, which breach is not cured within the terms of the DIP Note;

(f)     the dismissal of any of the Chapter 11 Cases or the conversion of any of the Chapter 11 Cases into a case under Chapter 7 of the Bankruptcy Code;

(g)     any application by the Debtors for entry of an order approving the non-consensual use of Cash Collateral;

(h)     a trustee or an examiner with enlarged powers (beyond those set forth in Sections 1106(a)(3) and (4) of the Bankruptcy Code) relating to the operation of the business of any Debtor is appointed in any of the Chapter 11 Cases without the prior written consent of the DIP Lender or any Debtor applies for, consents to, acquiesces in or fails to object to, any such appointment without the prior written consent of the DIP Lender);

(i)     this Interim Order is stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the DIP Lender;

(j) the occurrence of an "Event of Default" as defined under the DIP Note;

(k) the filing of a motion in these Chapter 11 Cases without the prior written consent of the DIP Lender (i) to obtain financing under section 364 of the Bankruptcy Code from any persons or entities other than the DIP Lender; (ii) to grant to any person or entity other than the DIP Lender a lien or security interest affecting any collateral (iii) to recover from any portion of the collateral any costs or expenses of preserving or disposing of such collateral under section 506(c) of the Bankruptcy Code or (iv) to authorize any action or actions adverse to the DIP Lender, or their rights and remedies hereunder, under the DIP Note or their interest in the collateral;

(l) the entry of an order in any of these Chapter 11 Cases confirming a plan of reorganization that does not contain a provision for (i) the termination of the DIP Lender's commitment to make DIP Loans and (ii) the indefeasible payment in full in cash of all obligations under the DIP Note

6. <u>Authorization for Payment of DIP Facility Fees & Expenses</u>. All fees paid and payable, and costs and/or expenses reimbursed or reimbursable (including, without limitation, all fees, costs and expenses referred to in the DIP Notes), as set forth in the DIP Note, by the Debtors to the DIP Lender are hereby approved. The Debtors are hereby authorized and directed to pay all such fees, costs, and expenses in accordance with the terms of the DIP Note and this Interim Order, without the Debtors and the DIP Lender's counsel having to file any further application with the Court for approval or payment of such fees, costs or expenses. Notwithstanding anything to the contrary herein, (i) the fees, costs and expenses of the DIP

14

Lender, whether incurred prior to or after the Petition Date, including, without limitation, all fees referred to in the DIP Note and all attorneys' fees and expenses, shall be deemed fully earned, non-refundable, and irrevocable as of the date of this Interim Order, and (ii) the Debtors shall promptly after payment of invoices for any such fees and disbursements, provide copies of same to the respective counsel for the Prepetition Secured Parties, the U.S. Trustee and all official committees.

7. <u>Amendments, Consents, Waivers, and Modifications</u>. The Debtors, with the express written consent of the DIP Lender, may enter into any amendments, consents, waivers or modifications to the DIP Note without the need for further notice and hearing or any order of this Court, provided, however, that the Debtors shall provide the United States Trustee, counsel to the Prepetition Secured Parties and counsel to Committee with three (3) business days' advance notice (which may be provided through electronic mail) of their intent to enter into any material amendments, consents, waivers or modifications to the DIP Note.

## GRANTING OF POSTPETITION LIENS AND SUPERPRIORITY CLAIMS TO THE LENDERS

8. <u>Lenders' Lien Priority</u>.

(a) To secure the obligations under the DIP Note, the DIP Lender is hereby granted valid and fully perfected, liens and security interests junior and subordinate only to the Prepetition Liens existing on the Petition Date (collectively, the "<u>Postpetition Liens</u>") in all of the property, assets or interests in property or assets of each Debtor, and all "property of the estate" (within the meaning of the Bankruptcy Code) of each Debtor, of any kind or nature whatsoever, real or personal, tangible or intangible or mixed now existing or hereafter acquired or created as of the Petition Date, including, without limitation, all accounts, inventory, goods, contracts, contract rights, investment property, instruments,

documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, general

intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit,

letter-of-credit rights, supporting obligations, machinery and equipment, real property

(including all facilities), fixtures, leases (and proceeds from the disposition thereof) to the

maximum extent permitted under such leases, all of the issued and outstanding capital stock

entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)), and all of the

issued and outstanding capital stock not entitled to vote (within the meaning of Treas. Reg.

Section 1 .956-2(c)(2)) of each subsidiary of such Debtor, all of the capital stock of all other

Persons that are not subsidiaries directly owned by such Debtor, money, investment property,

deposit accounts, all commercial tort claims and other causes of action, Cash Collateral, all

cash and non-cash proceeds, rents, products, substitutions, accessions, and profits of any of

the collateral described above, and subject to entry of the Final Order, any proceeds or

property recovered in connection with the pursuit of claims or causes of action arising under

Chapter 5 of the Bankruptcy Code, (the "Avoidance Actions") and the proceeds thereof

(collectively, the "DIP Collateral")

    (b) The Postpetition Liens shall be effective immediately upon the

entry of this Interim Order and shall not at any time be made subject or subordinated to, or

made *pari passu* with, any other lien, security interest or claim existing as of the Petition

Date, or created under Sections 363 or 364(d) of the Bankruptcy Code apart from the

Prepetition Liens.

    (c) The Postpetition Liens shall be and hereby are deemed fully

perfected liens and security interests, effective and perfected upon the date of this Interim

Order without the necessity of execution by the Debtors of mortgages, security agreements,

pledge agreements, financing agreements, financing statements and other agreements or instruments, such that no additional steps need be taken by the DIP Lender to perfect such interests.

9.      Lenders' Superpriority Claim.  The DIP Lender is hereby granted an allowed superpriority administrative expense claim (the "DIP Superpriority Claim") pursuant to Section 364(c)(1) of the Bankruptcy Code in each of the Debtor's Chapter 11 Cases and in any successor cases or cases under the Bankruptcy Code (including a case under chapter 7 of the Bankruptcy Code, the "Successor Cases") for all obligations under the DIP Note, having priority over any and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under Sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, payable from and having recourse to all pre- and postpetition property of the Debtors and all proceeds thereof including, without limitation, subject to entry of the Final Order, the Avoidance Actions; provided that the DIP Superpriority Claim shall be junior and subordinate in all rights and respects to the Prepetition Indebtedness and the Prepetition Liens  Except as set forth herein, no other superpriority claims shall be granted or allowed in these Chapter 11 Cases without the consent of the DIP Lender.

10.     Survival of Postpetition Liens & DIP Superpriority Claim.  The Postpetition Liens, DIP Superpriority Claim, and other rights and remedies granted under this Interim Order to the DIP Lender, shall continue in this and any Successor Cases and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases and/or upon the

dismissal of any of the Chapter 11 Cases or any Successor Cases and such liens and security

interests shall maintain their first priority as provided in this Interim Order until all the

obligations under the DIP Note have been indefeasibly paid in full in cash (or satisfied by

application of the Credit Bid) and completely satisfied and the DIP Lender's commitments

have been terminated in accordance with the DIP Note.

**PROVISIONS RELATING TO THE CARVE OUT, INVESTIGATION PERIOD, REMEDIES NOTICE PERIOD & RESTRICTIONS ON THE USE OF FUNDS & CASH COLLATERAL**

11.     Carve-Out. (a) The Postpetition Liens, the DIP Superpriority Claim,

and the Prepetition Liens shall be subject to: (i) fees payable to the United States Trustee

pursuant to 28 U.S.C. Section 1930(a)(6) or to the Clerk of the Bankruptcy Court (the "Case

Administration Fees"), (ii) unpaid professional fees and expenses ("Professional Fees")

payable to any legal or financial advisors retained by the Debtors and any Committee that are

incurred or accrued prior to the date of the occurrence of a Termination Event, but only as and

to the extent such Professional Fees are or have been provided for in the Budget and are

ultimately allowed by the Court pursuant to Section 330 of the Bankruptcy Code, (iii) unpaid

Professional Fees incurred or accrued on or after the date of the occurrence of a Termination

Event in an aggregate amount not to exceed $50,000.00, and (iv) the costs of the claims and

noticing agent (subject to the terms of its retention order and the Budget) (collectively, the

"Carve-Out"). So long as no Termination Event has occurred, other than final indefeasible

payment of the DIP Lender, the Debtors shall be permitted to pay Case Administration Fees,

the costs of the claims and noticing agent, and Professional Fees allowed and payable under

Bankruptcy Code Sections 330, 331 and 503, as provided in the DIP Note and the Budget.

Any payment of Carve-Out expenses incurred after the occurrence and during the continuance

of a Termination Event, including any payment of Professional Fees, shall permanently reduce the Carve-Out on a dollar-for-dollar basis. The DIP Lender's obligation to permit the use of Cash Collateral to fund or to otherwise pay the Carve-Out expenses from the proceeds of the DIP Collateral shall be added to and made part of the obligations under the DIP Note and secured by the DIP Collateral and otherwise entitled to the protections granted under this Interim Order, the DIP Note, the Bankruptcy Code and applicable law, as applicable.

(b)     Nothing contained in this Interim Order shall be construed: (i) to exempt those persons hereafter receiving interim compensation payments or reimbursement of expenses pursuant to any such Bankruptcy Court-approved procedure from the applicable provisions of bankruptcy law, including the requirements that such compensation or reimbursement be allowed on a final basis after the filing of appropriate fee applications, and, if applicable, any subsequent order of this Court requiring that such payments be disgorged, and/or (ii) as consent to the allowance of any fees and expenses referred to above, and shall not affect any right of the DIP Lender to object to the reasonableness of such amounts.

12.     <u>Restriction on Use of Funds</u>.  Notwithstanding anything herein to the contrary, no proceeds from the DIP Loans, DIP Collateral, Cash Collateral, or proceeds thereof, or any portion of the Carve-Out may be used by any of the Debtors, the DIP Lender, any Committee, and/or any trustee appointed in these Chapter 11 Cases, or any other person, party or entity to (a) request authorization to obtain postpetition loans or other financial accommodations pursuant to Section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than from the DIP Lenders; (b) assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or

adverse to the interests of, in any capacity, the DIP Lender or any of the Prepetition Secured

Parties, or any of its respective officers, designees, directors, employees, agents, attorneys,

affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, or

action, including, without limitation, (i) any Avoidance Actions or other actions arising under

chapter 5 of the Bankruptcy Code against the DIP Lender or any of the Prepetition Secured

Parties; (ii) any action relating to any act, omission or aspect of the relationship between the

DIP Lender and the Debtors and their affiliates and/or between any of the Prepetition Secured

Parties and the Debtors; (iii) any action with respect to the validity and extent of the obligations

under the DIP Note or the Prepetition Indebtedness, or the validity, extent, and priority of the

Postpetition Liens or the Prepetition Liens; (iv) any action seeking to invalidate, set aside,

avoid or subordinate, in whole or in part, the Postpetition Liens or the Prepetition Liens; and/or

(v) any action that has the effect of preventing, hindering or delaying (whether directly or

indirectly) the DIP Lender or any of the Prepetition Secured Parties in respect of their liens and

security interests in the DIP Collateral, Cash Collateral or the Prepetition Collateral; and/or (c)

pay any Claim of a Creditor (as such terms are defined in the Bankruptcy Code) without the

prior written consent of the DIP Lender.

13. Challenge to Prepetition Indebtedness. Notwithstanding anything in this

Interim Order to the contrary, including the Debtors', DIP Lender's, and Prepetition Secured

Parties' acknowledgments, agreements, stipulations and releases herein solely as they relate to

the Prepetition Secured Parties, their respective agents and/or the Transaction Documents, the

Committee, and all non-debtor parties in interest (including any trustee appointed or elected in

the cases prior to the Investigation Termination Date (as defined in this Paragraph)) with the

requisite standing, shall have until no later than the earlier of: (i) seventy-five (75) days from the

date of the entry of this Interim Order; and (ii) for any Committee, if formed, sixty (60) days from the date of such Committee's formation; (the "<u>Investigation Termination Date</u>") to file an adversary proceeding or commence a contested matter (a) challenging or objecting to the validity, perfection, enforceability, or priority of the Prepetition Secured Lenders' security interests in and liens on the Prepetition Collateral or the Prepetition Indebtedness, or (b) otherwise asserting any claims or causes of action against the Prepetition Secured Parties (a "<u>Challenge</u>"). If a Challenge is not filed on or before the Investigation Termination Date, then (w) all of the agreements, acknowledgments, representations, and stipulations contained in this Interim Order shall be irrevocably binding on the estates, the Committee and all parties in interest (including, without limitation, a receiver, administrator, or trustee appointed in any of the these Chapter 11 Cases or in any jurisdiction) without further action by any party or this Court and the Committee and any other party in interest (including, without limitation, a receiver, administrator, trustee, examiner with expanded powers, responsible officer, or other estate representative appointed in any of these Chapter 11 Cases or in any jurisdiction) shall thereafter be forever barred from bringing any Challenge, (x) the Prepetition Indebtedness under the SPA and Transaction Documents shall constitute allowed claims for all purposes in these cases and any Successor Cases, (y) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination or otherwise avoidable, and (z) the Prepetition Indebtedness, the Prepetition Liens on the Prepetition Collateral shall not be subject to any further Challenge by the Debtors or any other party in interest.

   14.  <u>Automatic Stay Modified</u>. Subject to Paragraph 13(a) below, the automatic stay provisions of Section 362 of the Bankruptcy Code are vacated and modified

without further application or motion to, or order from the Court to the extent necessary to permit the DIP Lender, upon the occurrence of a Termination Event, and without any interference from any Debtor or any other party interest but subject to five (5) business days' prior written notice (which may be delivered by electronic mail) (the "Remedies Notice Period") to the Debtors, their counsel, counsel to the Prepetition Secured Parties, counsel to any Committee and counsel to the U.S. Trustee, to exercise all rights and remedies provided for in the DIP Note, this Interim Order or under other applicable bankruptcy and nonbankruptcy law to the extent permitted under the DIP Note and this Interim Order including, without limitation, the DIP Lender's right to (i) terminate the commitments under the DIP Note, (ii) cease making DIP Loans and/or suspend or terminate the advances under the DIP Note and (iii) declare all obligations under the DIP Note immediately due and payable and/or (iv) take any actions reasonably calculated to preserve or safeguard the DIP Collateral or to prepare the DIP Collateral for sale; provided, however, that immediately upon the occurrence of a Termination Event or a default by any of the Debtors of any of their obligations under this Interim Order or the DIP Note, the Debtor, for the benefit of the DIP Lender, may charge interest at the default rate set forth in the DIP Note without being subject to the Remedies Notice Period but subject to review by this Court; provided however that the DIP Lender may not take any action or seek any remedies against any of the Prepetition Collateral, including any of the actions or remedies set forth in this paragraph 14, without the prior written consent of the Prepetition Secured Parties.

(a)     The automatic stay of Section 362(a) of the Bankruptcy Code, to the extent applicable, shall be deemed terminated without the necessity of any further action by the Court in the event that the Debtors, the Committee if any, and/or the U.S.

Trustee have not obtained an order from this Court to the contrary prior to the expiration of the Remedies Notice Period.

(b)     The Debtors, the Committee and/or the U.S. Trustee shall have the burden of proof at any hearing on any request by them to reimpose or continue the automatic stay of Section 362(a) of the Bankruptcy Code or to obtain any other injunctive relief.

(c)     Subject to the Remedies Notice Period and Paragraph 14(a) the automatic stay pursuant to Section 362 of the Bankruptcy Code shall be further modified, to the extent necessary, to permit the DIP Lender without further application or motion, or order from the Court, to foreclose or otherwise enforce their security interests in or liens on any or all of the DIP Collateral and/or the Prepetition Collateral and/or to exercise any other default-related rights and remedies under the DIP Note or this Interim Order and neither Section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the DIP Lender from exercising or enforcing such default-related rights and remedies, regardless of any change in circumstances (whether or not foreseeable).

(d)     If the DIP Lender is entitled, and has elected in accordance with the provisions hereof, to enforce its liens or security interests or exercise any other default-related remedies, and provided that the DIP Lender, in its sole discretion, has made available to the Debtors (through additional DIP Loans or by consenting to the Debtors' use of Cash Collateral) sufficient funds to pay the reasonable and necessary costs thereof, if any, the Debtors shall cooperate with the DIP Lender in connection with such enforcement by, among other things, (i) providing at all reasonable times access to the Debtors' premises to representatives or agents of the DIP Lender, (ii) providing the DIP Lender and their

23

representatives or agents, at all reasonable times access to the Debtors' books and records and any information or documents requested by the DIP Lender or its respective representatives, (iii) performing all other obligations set forth in the DIP Note, and (iv) taking reasonable steps to safeguard and protect the DIP Collateral, and the Debtors shall not otherwise interfere with or actively encourage others to interfere with the DIP Lender's enforcement of rights.

(e)     This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Interim Order and relating to the application, re-imposition or continuance of the automatic stay of Section 362(a) of the Bankruptcy Code or other injunctive relief requested.

(f)     Upon the occurrence and during the continuance of Termination Event and the expiration of any Remedies Notice Period, the DIP Lender shall have no further obligation to provide financing under the DIP Note and no obligation to permit the continued use of Cash Collateral.

(g)     Upon the occurrence and during the continuance of a Termination Event, the DIP Lender may at all times continue to collect and sweep cash as provided herein.

(h)     This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Interim Order and relating to the application, re-imposition or continuance of the automatic stay of Section 362(a) of the Bankruptcy Code, use of Cash Collateral, or other injunctive relief requested.

(i)     Neither Section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the exercise,

enjoyment and enforcement of any rights, benefits, privileges and remedies set forth in this Paragraph 15 regardless of any change in circumstances.

## ADDITIONAL PROVISIONS COMMON TO DIP FINANCING AND USE OF CASH COLLATERAL AUTHORIZATION

15. <u>Equities of the Case Waiver</u>. Subject to entry of the Final Order: (a) the DIP Lender and each of the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and (b) no person may assert an "equities of the case" claim under Section 552(b) of the Bankruptcy Code against the DIP Lender or any of the Prepetition Secured Parties with respect to proceeds, product, offspring or profits of any of the DIP Collateral.

16. <u>Additional Perfection Measures</u>. (a) The Postpetition Liens shall be perfected by operation of law immediately upon entry of this Interim Order. Neither the Debtors nor the DIP Lender shall be required to enter into or obtain landlord waivers, mortgagee waivers, bailee waivers, warehouseman waivers or other waiver or consent, or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction (including, trademark, copyright, trade name or patent assignment filings with the United States Patent and Trademark Office, Copyright Office or any similar agency with respect to intellectual property, or filings with any other federal agencies/authorities), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the Postpetition Liens.

(b)     If the DIP Lender, each in its sole discretion, chooses to obtain consents from any landlord, licensor or other party in interest, to file mortgages, financing statements, notices of lien or similar instruments, or to otherwise record or perfect such security interests and liens:

(i)     all such documents shall be deemed to have been recorded and filed as of the time and on the date of entry of this Interim Order; and

(ii)     no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.

(c)     In lieu of obtaining such consents or filing any such mortgages, financing statements, notices of lien or similar instruments, the DIP Lender may choose to file a true and complete copy of this Interim Order in any place at which any such instruments would or could be filed, together with a description of the DIP Collateral (as defined and limited by Paragraph 8(a) above) and such filing by the DIP Lender shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of this Interim Order.

17.     _Application of DIP Collateral Proceeds_.  Upon a Termination Event, all proceeds of DIP Collateral shall be applied as follows: (a) _first_, to fund the Carve-Out; (b) _second_, to repay all of the Prepetition Indebtedness, including any postpetition interest (including interest at the default rate), fees, costs (including fees and costs of counsel) and charges that may be payable to the Prepetition Secured Parties under Bankruptcy Code section 506(c);  _third_, to repay all fees and expenses incurred by the DIP Lender pursuant to the DIP Note; (c) _fourth_, to repay the obligations under the DIP Note, and (d) _fifth_,  thereafter, to the Debtors' estates.

18.     _Access to DIP Collateral_.  Upon three (3) business days written notice to the landlord, leinholder, licensor or other third party owner of any leased or licensed premises or intellectual property that a Termination Event under this Interim Order has

occurred and is continuing, the DIP Lender may exercise its rights and remedies under the DIP Note and applicable law, provided, that, the DIP Lender's right to use any licensed DIP Collateral or to occupy any leased premises for the purpose of removing, selling or otherwise disposing of the DIP Collateral shall be limited to (i) those rights which the DIP Lender may have under applicable nonbankruptcy law; (ii) those rights to which the applicable landlord or licensor agrees in writing with the DIP Lender; or (iii) such rights as may be ordered by this Court upon motion and notice to the applicable landlord or licensor with opportunity to respond that is reasonable under the circumstances; provided, however, that the DIP Lender shall only pay and amount equal to the Debtors' obligations payable during the period of such occupancy or use by the DIP Lender, as the case may be, calculated on a per diem basis; provided further that the DIP Lender may not take any action or exercise any remedies against the Prepetition Collateral without the prior written consent of the Prepetition Secured Parties. Nothing herein shall require the Debtors or the DIP Lender to assume any lease or license under Section 365(a) of the Bankruptcy Code as a precondition to the rights afforded to the DIP Lender in this Paragraph 21.

19. <u>Cash Management Systems</u>. The Debtors are authorized and directed to maintain their cash management system in a manner consistent with the DIP Note, this Interim Order, and the order of this Court approving the maintenance of the Debtors' cash management system, provided, however, that such order is on terms and conditions reasonably acceptable to the DIP Lender and such order is not inconsistent with the terms specified herein or the DIP Note.

20. <u>Budget Maintenance</u>. (a) The Budget shall at all times be in form and substance acceptable to the Prepetition Secured Parties, the DIP Lender and approved in

writing by Prepetition Secured Parties and the DIP Lender, each in reasonable discretion. The Debtors shall provide updates to the Budget on a weekly basis comparing their actual financial performance to that set forth in the Budget, and otherwise in form and substance reasonably satisfactory to the Prepetition Secured Parties and the DIP Lender. The DIP Lender and the Prepetition Secured Parties shall have no obligation with respect to the Debtors' use of the proceeds of the DIP Loans or Cash Collateral, and shall not be obligated to ensure or monitor the Debtors' compliance with the Budget or to pay (directly or indirectly) any expenses incurred or authorized to be incurred pursuant to the Budget. Funds borrowed under the DIP Note and Cash Collateral used under this Interim Order shall be used by the Debtors in accordance with this Interim Order and the Budget. The DIP Lender's or Prepetition Secured Parties' consent to the Budget shall not be construed as consent to the use of any Cash Collateral or a commitment to continue to provide DIP Loans after the Interim Period or occurrence of a Termination Event, regardless of whether the aggregate funds shown on the Budget have been expended.

(b) The Budget may be modified or supplemented from time to time only by written agreement of the Prepetition Secured Parties, the DIP Lender and the Debtors without the need of further notice, hearing or order of this Court. A copy of any modifications or supplements will be provided by the Debtors to counsel to the Prepetition Secured Parties, any Committee and the U.S. Trustee.

21. <u>Access to Books & Records</u>. The Debtors (and/or their legal and financial advisors) will (a) keep proper books, records and accounts in accordance with GAAP in which full, true and correct entries shall be made of all dealings and transactions in relation to its business and activities, (b) cooperate, consult with, and provide to the Prepetition Secured

Parties and the DIP Lender all such information as required or allowed under the DIP Note, the provisions of this Interim Order or that is afforded to any Committee and/or such Committee's respective legal or financial advisors, (c) permit upon one (1) business day's notice, representatives of the Prepetition Secured Parties and the DIP Lender to visit and inspect any of their respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations and accounts with their respective officers, employees and independent public accountants as often as may reasonably be desired, and (d) permit representatives of the Prepetition Secured Parties and the DIP Lender to discuss with the Debtors' management matters concerning the general status of the Debtors' business, financial condition and operations.

22.     Successors and Assigns.  The DIP Note and the provisions of this Interim Order shall be binding upon the Debtors, the DIP Lender, each of the Prepetition Secured Parties and each of their respective successors and assigns, and shall inure to the benefit of the Debtors, the DIP Lender, each of the Prepetition Secured Parties, and each of their respective successors and assigns including, without limitation, any trustee, responsible officer, estate administrator or representative, or similar person appointed in a case for any Debtor under any chapter of the Bankruptcy Code.  The provisions of this Interim Order shall also be binding on all of the Debtors' creditors, equity holders, and all other parties in interest.

23.     Binding Nature of Agreement.  The DIP Note to which any of the Debtors are or will become a party shall constitute legal, valid, and binding obligations of the

Debtors party thereto, enforceable in accordance with their terms. The DIP Note has been or will be properly executed and delivered to the DIP Lender by the Debtors, no later than one day after entry of this Interim Order. Subject to the reservation of rights and remedies by the Prepetition Secured Parties as set forth herein, the rights, remedies, powers, privileges, liens, and priorities of the DIP Lender provided for in this Interim Order and in the DIP Note shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation order), by any plan of reorganization or liquidation in these Chapter 11 Cases, by the dismissal or conversion of these Chapter 11 Cases or in any subsequent case under the Bankruptcy Code unless and until the obligations under the DIP Note have first been indefeasibly paid in full in cash (or satisfied by application of the Credit Bid) and completely satisfied and the commitments terminated in accordance with the DIP Note.

24. _Subsequent Reversal or Modification._ Subject to the reservation of rights and remedies by the Prepetition Secured Parties as set forth herein, this Interim Order is entered pursuant to Section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the DIP Lender all protections afforded by Section 364(e) of the Bankruptcy Code. Subject to the reservation of rights and remedies by the Prepetition Secured Parties as set forth herein, if any or all of the provisions of this Interim Order are hereafter reversed, modified, or vacated, that action will not affect (a) the validity of any obligation, indebtedness or liability incurred hereunder by any of the Debtors to the DIP Lender, prior to the date of receipt by the DIP Lender of written notice of the effective date of such action or (b) the validity and enforceability of any lien or priority authorized or created under this Interim Order or pursuant to the DIP Note. Subject to the reservation of rights and remedies by the Prepetition Secured Parties as set forth herein, notwithstanding any such reversal, stay,

modification or vacatur, any postpetition indebtedness, obligation or liability incurred by any of the Debtors to the DIP Lender prior to written notice to the DIP Lender of the effective date of such action, shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender, shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Note with respect to all such indebtedness, obligations or liability.

25. <u>Collateral Rights</u>. In the event that any party who holds a lien or security interest in DIP Collateral that is junior and/or subordinate to the Postpetition Liens in such DIP Collateral receives or is paid the proceeds of such DIP Collateral, or receives any other payment with respect thereto from any other source, (a) prior to the indefeasible payment in full in cash or satisfaction of all the Prepetition Indebtedness under the SPA and Transaction Documents in a manner acceptable to the Prepetition Secured Parties, and (b) prior to the indefeasible payment in full in cash (or satisfaction by application of the Credit Bid) and complete satisfaction of all obligations under the DIP Note and termination of the commitment in accordance with the DIP Note, Prepetition Secured Parties, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral in trust for the Prepetition Secured Parties and the DIP Lender and shall immediately turnover such proceeds for application, first, to the Prepetition Indebtedness and, second, to the obligations under the DIP Note and this Interim Order until indefeasibly paid in full in cash (or satisfied through application of the Credit Bid) and completely satisfied in full.

26. <u>No Waiver</u>. This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that any of the Prepetition Secured Parties or the DIP Lender may have to bring or be heard on any matter brought before this Court.

27. <u>Conversion/Dismissal</u>. If an order dismissing or converting any of these Chapter 11 Cases under Sections 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide that (a) the Prepetition Liens, the Postpetition Liens and the DIP Superpriority Claim shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in this Interim Order and the DIP Note until all of the Prepetition Indebtedness and all obligations under the DIP Note are satisfied pursuant to the terms of this Paragraph and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the Prepetition Liens, the Postpetition Liens and the DIP Superpriority Claim.

28. <u>Limits on Liability</u>. Nothing in this Interim Order or in any of the DIP Note, shall in any way be construed or interpreted to impose or allow the imposition upon any of the Prepetition Secured Parties or the DIP Lender of any liability for any claims arising from any and all activities by the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts.

29. <u>Priority of Terms</u>. To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Note, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" the DIP Note, the terms and provisions of this Interim Order shall govern.

30. <u>No Third Party Beneficiary</u>. Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

31.  Survival.  Except as otherwise provided herein, (a) the protections and the relative lien priorities afforded to the Prepetition Secured Parties and the DIP Lender under this Interim Order, and any actions taken pursuant thereto, shall survive the entry of an order (i) dismissing any of the Chapter 11 Cases or (ii) converting any of the Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code, and (b) the Prepetition Liens, the Postpetition Liens, and the DIP Superpriority Claim shall continue in the Chapter 11 Cases and maintain their priorities, in any such successor case or after any such dismissal.  Except as otherwise provided herein, the Prepetition Liens, the Postpetition Liens and the DIP Superpriority Claim shall maintain their priorities as provided in this Interim Order, the Final Order, and the DIP Note, and not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of indebtedness (except with respect to any additional financing to be provided by the DIP Lender in accordance with the Final Order), or any conversion of any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code or dismissal of any of these Chapter 11 Cases, or by any other act or omission until (i) all of the Prepetition Indebtedness and all obligations under the DIP Note are indefeasibly paid in full in cash (or by application of the Credit Bid) and completely satisfied, and the commitments under the DIP Note are terminated in accordance therewith.

32.  Adequate Notice.  The notice given by the Debtors of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2), and the local rules of this Court, and, under the circumstances was adequate and sufficient.  No further notice of the request for the relief granted at the Interim Hearing is required.  The Debtors shall promptly mail copies of this Interim Order and notice of the Final Hearing to the Notice Parties, any known party effected by the terms of the Final Order, and any other party

requesting notice after the entry of this Interim Order, within 1 business day after the entry of this Interim Order. Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with the Court and served so as to be _actually received_ no later than five (5) days prior to the Final Hearing by the following: (i) counsel to the Debtors, Elliott Greenleaf, LLP, 1105 North Market Street, Suite 1700, Wilmington, Delaware 19801, Attention: Rafael Zahralddin-Aravena, (ii) counsel to the DIP Lender, Drinker Biddle & Reath LLP, One Logan Square, Suite 2000, Philadelphia, PA 19103, Attention: Michael Jordan, (iii) counsel to the Prepetition Secured Parties, Milbank, Tweed, Hadley & McCloy LLP, 601 S. Figueroa Street, 30th Floor, Los Angeles, CA 90017, Attn: Mark Shinderman / Neil Wertlieb and (iv) the Office of the U.S. Trustee, Mark Kenney, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801. The Court shall conduct a Final Hearing on the Motion commencing on September 8, 2011.

       33.   _Entry of Interim Order; Effect_. This Interim Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Fed. R. Bankr. P. 6004(g), 7062, 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Interim Order on the Court's docket in these Chapter 11 Cases.

       34.   _Retention of Jurisdiction_. This Court shall retain jurisdiction overall all matters pertaining to the implementation, interpretation and enforcement of this Interim Order.

       35.   _Binding Effect of Interim Order_. The terms of this Interim Order shall be binding on any trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code.

Dated: Wilmington, Delaware
      June 2, 2011

                        THE HONORABLE PETER J. WALSH
                        UNITED STATES BANKRUPTCY JUDGE